# Illinois Official Reports

## Appellate Court

---

### *People v. Bridgeforth*, 2017 IL App (1st) 143637

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IDRIS BRIDGEFORTH, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-3637 |
| Filed | August 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-12115; the Hon. Erica L. Reddick, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part; fines and fees order corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Katherine M. Donahoe, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Whitney L. Bond, and Aaron R. Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Idris Bridgeforth was convicted of one count of criminal sexual assault, two counts of aggravated criminal sexual abuse, and one count of indecent solicitation of a child based on his contact with J.E., a student at the school where defendant was a sports coach. Defendant was sentenced to 10 years in prison for those offenses. On appeal, defendant contends this case should be remanded for additional inquiry, pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), into his claim that his trial attorney should have presented records of physical therapy sessions and coaching time sheets to show that defendant was elsewhere during the time of the described encounters. Defendant also claims the trial court erred in assessing two fees against him.

¶ 2    Count I of the indictment charged defendant with criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2010)) for committing an act of sexual penetration with J.E., who was between 13 and 18 years of age when the act was committed, where defendant was older than 17 years of age and held a position of trust, authority, or supervision in relation to J.E. Counts II and III charged defendant with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(f) (West 2010)) for committing acts of sexual conduct, specifically touching his hand to J.E.'s vagina and breast for the purpose of sexual gratification, where J.E. was between 13 and 18 years of age and defendant held a position of trust, authority, or supervision. Count IV charged defendant with indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2010)) for knowingly soliciting J.E. to perform an act of sexual penetration where he was older than 17 years of age with the intent to commit criminal sexual assault. The indictment averred that those actions took place between December 1, 2011, and June 5, 2012.

¶ 3    Before trial, defense counsel told the court he had subpoenaed defendant's time sheets from the school and J.E.'s school records to "see what dates she was there or wasn't there." The court conducted an *in camera* inspection of those documents and gave to each party copies of what the court described as "employee time records."

¶ 4    At trial, J.E. testified that in 2012, she was 14 years old and in the eighth grade at Asburn Elementary School in Chicago. She had been on the track team since fifth grade and the basketball team since sixth grade. Defendant was one of her coaches.

¶ 5    Between April and June 2012, J.E. attended between three and five track practices each week. Defendant gave J.E. a ride home from practice about twice each week because J.E.'s mother was unable to pick her up. Defendant also drove J.E. home about twice each week during the winter basketball season. If defendant also gave rides to other students, he usually dropped J.E. off last.

¶ 6    J.E. described four instances of contact by defendant between April and June 2012. In the last week of April 2012, defendant drove J.E. home after a meeting held at school about track, and defendant touched her inner thigh. The next incident occurred within the next week, when J.E. was in the passenger seat of defendant's car after school. She wore basketball shorts and a T-shirt. Defendant touched her thigh and reached inside the leg of her shorts and her underwear, and defendant touched and entered her vagina with his hand. J.E. asked defendant to stop, and he did. The next encounter took place a couple of weeks later, in May, when defendant touched her breast and her thigh. The final incident occurred on June 2, after a track meet, when defendant kissed J.E. and put her hand on his penis.

¶ 7    On cross-examination, J.E. testified defendant had been in a car accident in December 2011 and was not at the school from April 9 to May 4. Defendant drove her home during the entire basketball season through January 2012.

¶ 8    Stacy Porche, J.E.'s mother, testified that defendant coached track in the spring of 2012 after taking medical leave. J.E. had track practice "almost every day," according to Porche. Defendant gave J.E. rides home in late April and May after practice or a track meet. She discovered text messages between defendant and J.E. on J.E.'s device the morning of June 6.

¶ 9    The State introduced into evidence a series of text messages between defendant and J.E. that were exchanged between May 31 and June 5. One exchange took place from 5:50 p.m. to 8:01 p.m. on June 2, and the final series of messages took place on June 5 between 4:16 p.m. and 10:26 p.m.

¶ 10    Jewel Diaz, the school principal, and Megan McKay, a teacher at Ashburn, testified that defendant took medical leave beginning April 9. Neither of them saw defendant in school between that date and May 4. Diaz did not know if defendant was coaching during that time. Defendant was arrested at the school on June 6. Because sports coaches are compensated by the Chicago Board of Education, not the school itself, Diaz did not sign off on or have records of time sheets submitted by defendant.

¶ 11    Chicago police detective Charles Hollendoner testified he recovered text messages from defendant's cell phone and a device used by J.E. Defendant made an oral statement to the detective admitting to sexual contact with J.E. consistent with her testimony. The State rested.

¶ 12    Saadia Bridgeforth, defendant's wife, testified he was in a car accident on March 6, 2012, and had knee surgery in late March or early April. From then until May 7, defendant was on crutches and did not drive a car. After May 7, defendant used her vehicle and a friend's car during his recuperation. Defendant did not go to the school or coach track during that period. After May 7, she worked either from 7 a.m. to 3 p.m. or from noon to 8 p.m. and was sometimes off on a weekday. Defendant typically arrived home between 4:30 and 5 p.m. but could get home as late as 6 p.m. on the days he coached track.

¶ 13    On cross-examination, Bridgeforth could not state which shift she worked on which days in April or May and did not know where defendant was when she was away from home. During defendant's recuperation, he could not bend his right knee and needed assistance dressing.

¶ 14    At the close of evidence, the trial court found defendant guilty on all charged counts, noting that J.E.'s testimony was detailed and was corroborated by defendant's statement. The court continued the case to allow defense counsel to file a written motion for a new trial.

¶ 15    At the next court date, defense counsel told the court he had just received records of defendant's physical therapy sessions after his surgery. This exchange occurred regarding that evidence:

"DEFENSE COUNSEL: There are records concerning dates and times of when [defendant] got physical therapy in April that—now, I didn't have these records. I had records that his family provided before trial. I think one of the problems was that until trial, since there was such a broad time alleged, from December of 2011 until June of 2012, it was never pinpointed.

There may be a situation where [defendant] feels—I talked to him about this just in the back because I just got these—that I didn't present something I should have

presented. I don't necessarily think that's the case. He's presenting this like they should have known or I should have—physical therapy, these hours. The records I have, expect [*sic*] for one date, would be relevant.

In any event, the question, I think, I present—and I told [defendant] if he feels that in some way I didn't represent him as I should have, like if he feels there was ineffective assistance of counsel, now is the time for him to state that. And if he wants to discharge me or bring in another attorney and claim ineffective [assistance of counsel] or if he can't afford one, I told him the Court would appoint one for him, but this would be the opportunity. I just was handed these, so I just had this conversation with him. So I'm not sure. He tells me he's generally satisfied. But again, there's this thing out here. I don't know. Maybe he needs a little time to think about this before we proceed."

¶ 16   The court continued the case to allow counsel to consult with defendant "and learn in greater detail what the claimed concerns are," noting that a *Krankel* hearing might be necessary.

¶ 17   At the next court date, counsel stated that defendant told him "for the first time" on the prior date that he had documentation of his physical therapy appointments that he thought should have been presented at trial. Counsel noted "there was a date in April and a date in May that the record he gave me indicated he had an appointment."

¶ 18   The court stated it had previously continued the matter for discussion between defendant and defense counsel and noted it "did want to make further inquiry of [defendant] in particular before I go forward." The State asserted defendant was required to "reduce his motion for new trial alleging ineffective assistance of counsel in writing. And we are not waiving that written motion."

¶ 19   After further discussion, the court addressed defendant:

"I have now been made aware on today's date as well as the last court date that you have concerns with your lawyer's representation. The State's representation is correct. It is important that if you believe you have not received effective assistance of counsel as part of your trial process, that should be reduced to a written motion and presented to the court, the specific reasons therefore.

Your lawyer has orally conveyed to me some concerns that you have raised with him together with, you know, the representations that there was some additional documentation that you believe would have been critical to your trial process."

¶ 20   The court reiterated that it was "appropriate for that to be prepared in a written form and presented to the Court if you are asking that the Court remove your current attorney as your attorney because of ineffectiveness."

¶ 21   Defense counsel stated he had discussed his trial performance with defendant and that defendant's only claim was the failure to present evidence of his physical therapy appointments. The court asked defendant if he would like to prepare a written motion asking that counsel be removed as his attorney. Defendant responded that his counsel "has been good."

¶ 22   Defendant continued to address the court as follows, in pertinent part:

"But the issue I am having is when I spoke to him to represent me, it was an issue that during that time I was attending physical therapy appointments. That's the reason I

couldn't coach. And none of that was brought up and my physical therapy appointments was [*sic*] not presented to the Court.

*** I can't be two places at one time. And that's—that's the heart of it right there. It was not looked into. [Counsel] received records stating that, yes, I had surgery. Yes, I had followup appointments with my doctor. But at the same time, with those records, the hospital records, it should have been looked into that I also had physical therapy. *** And my therapies are dated and time stamped through that medical office."

¶ 23 The following exchange then took place:

"THE COURT: All right. So just to ensure that I am understanding the point or the crux of your point, it appears that you are saying the physical therapy appointment, the specific dates and times during which you had physical therapy following your knee surgery, your position is those should have been introduced into evidence.

DEFENDANT: Correct, because—

THE COURT: I just need a yes or a no.

DEFENDANT: Yes, ma'am.

THE COURT: Okay. Is that the whole of the concern at this point?"

¶ 24 Defendant told the court that in addition to his claim regarding the physical therapy appointments, counsel had not been able to locate time sheets indicating that he had "coached this team." The court asked defendant if his second claim was that counsel failed to introduce evidence that he was not coaching during the time he had surgery and received physical therapy. Defendant responded that was correct and said he had no other complaints about his counsel's representation.

¶ 25 The court then asked defense counsel to respond to defendant's contentions. Counsel said he never received time sheets in response to his subpoena and that "we even questioned the principal about it on the witness stand." Counsel stated he was able to establish that defendant was not working during April and until May 7, noting that Diaz and McKay testified they did not see defendant in school during that time.

¶ 26 Counsel told the court he received defendant's "school records, his employment records at the school showing the time he clocked out." As to the records of defendant's physical therapy appointments, counsel said he had not discussed them with defendant before.

¶ 27 The court asked defendant if he would like to bring anything else to the court's attention. Defendant responded as follows:

"Yes, [Y]our Honor. Those two issues, which I did bring up, were stated when they first took my case back in June of 2012[.] And they asked me concerning that. And I told them, no, I was not coaching because during that time I had surgery and I was out and I was going through physical therapy. That's the reason I didn't coach any teams. I made that point very clear."

¶ 28 Defendant said his counsel told him it was "not a problem" and they were "not worried about that at that time." Defendant continued:

"And then when they narrowed [the incidents] down to the timeframe of April, May and June, that's when I really told them I can't be in two places at one time because I *** had the knee surgery in April, and I was attending physical therapy after my knee surgery even when I went back to work and that my schedule was based upon my physical therapy.

I will pick my wife up on days that I did not have [therapy]. And on the late days, which is what her work says, those were the days in which I had physical therapy. And they said, well, do you have any medical records? I said my wife can get you those medical records. It would state in those medical records that I needed to attend physical therapy at least three to four days out of the week. That's the reason I was unable to coach."

¶ 29 The court found defendant had not stated a claim of his counsel's ineffectiveness:

"Based on all of what I have heard with regard to your complaint, with your representation, as well as the responses of your attorney. And I am also considering *** [the] disputes as to what evidence should have been introduced, I don't find that the complaints at this point amount to a complaint requiring the removal of your attorney. And I note that you yourself have indicated that other—with the exception of these two disagreements as to the evidence that should have been introduced, you have been otherwise satisfied with your representation.

So I think that in inquiring and hearing the nature of the complaints, the basis, there is not a complaint or a viable situation essentially that warrants your counsel being removed and other counsel being appointed.

So that's going to conclude the—what is essentially a quasi-*Krankel* hearing as there was not a formal request for counsel's removal, but I did find it important to air what the concerns with your representation were so that it could be determined what, if any, impact it would have on the remainder of the proceedings before the court."

¶ 30 The court granted defendant leave to amend his motion for a new trial.

¶ 31 Counsel filed an amended motion for a new trial, asserting he had received records of defendant's physical therapy appointments on nine specific days in April, May and June 2012, as listed in the motion. Those records were attached to the motion. The motion asserted that, "[h]ad the existence of these records been known to counsel prior to or during trial, witnesses who treated defendant on the above dates would have been called to establish that defendant could not have committed the alleged acts against [J.E.] on dates when he was receiving physical therapy."

¶ 32 In denying defendant's motion, the court noted that, because the abuse in this case was "alleged to have occurred over a period" of time, namely between December 2011 and June 5, 2012, "there will be some difficulty with regard to establishing exact dates and exact times." The court noted the State was not required to prove the time or date of each offense and found that the physical therapy records would not have changed the result of defendant's trial.

¶ 33 The court sentenced defendant to seven years in prison on count I and three concurrent terms of three years each on the remaining counts. Those sentences were to be served consecutively for a total of 10 years in prison. The court also imposed $1449 in various fines and fees.

¶ 34 On appeal, defendant contends that, pursuant to *Krankel*, this case should be remanded for further inquiry into his claims of ineffective assistance of counsel. Defendant argues the trial court erred in telling him that a written motion was required for his claims to be considered, and he further contends the trial court did not sufficiently inquire as to the physical therapy records attached to his posttrial motion and his coaching time sheets. The State responds that, regardless of the trial court's remarks about a written motion, the court conducted a full inquiry

into defendant's claims, as required by *Krankel*, and correctly found his claims were without merit.

¶ 35    In *Krankel*, the defendant filed a *pro se* posttrial motion asserting that his trial attorney was ineffective for failing to investigate and present an alibi defense. *Krankel*, 102 Ill. 2d at 187. The trial court denied the motion after hearing the defendant's argument; however, on appeal, the parties agreed that new counsel should have been appointed to represent the defendant for purposes of arguing the motion. *Id.* at 188-89. Following *Krankel*, a procedure has developed that "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39.

¶ 36    The main objective of a *Krankel* inquiry is to "facilitate the trial court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal." *People v. Ayres*, 2017 IL 120071, ¶ 13. When the trial court is presented with a posttrial motion alleging counsel's deficient representation, the court is required to conduct some inquiry to examine the factual basis of the defendant's claim. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003).

¶ 37    In *Moore*, our supreme court established a framework for those inquiries:

"[T]he trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.*

¶ 38    In making that inquiry, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Id.* at 78. The court also may discuss the allegations directly with the defendant. *Id.* The trial court may base its evaluation of the defendant's allegations on its knowledge of defense counsel's performance at trial, as well as the "insufficiency of the defendant's allegations on their face." *Id.* at 79. Because we are considering the adequacy of the trial court's inquiry into defendant's claims of counsel's ineffectiveness, which is a question of law, our review is *de novo*. See *People v. Vargas*, 409 Ill. App. 3d 790, 801 (2011).

¶ 39    At the outset, we address the trial court's statement that the defendant in this case was required to present his claims of counsel's ineffectiveness in written form. Our supreme court recently reiterated in *People v. Ayres*, 2017 IL 120071, ¶ 11, that a defendant is not required to file a written motion; rather, the defendant may orally raise the issue of counsel's deficient representation. See also *Patrick*, 2011 IL 111666, ¶ 29; *Moore*, 207 Ill. 2d at 79 ("a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention"). Therefore, the trial court in this case was incorrect in telling defendant that he had to provide a written motion containing his claims.

¶ 40    Defendant further contends that, because the court told him he must state his concerns in writing, the court then did not conduct an adequate inquiry or "make a record demonstrating" that the claims lacked merit. We disagree. As quoted above at length, the record in this case establishes that, during numerous exchanges, the trial court elicited further details about defendant's claims and considered the substance of his argument regarding counsel's performance. The court heard counsel's explanation and questioned defendant at several points to ensure a full understanding of his claim.

¶ 41    To restate defendant's claim, he contended counsel should have presented physical therapy records and coaching time sheets to show that he did not coach track during the period of his medical leave in April and May 2012. At the first court date following trial, counsel told the court it had just received records of the dates on which defendant had physical therapy appointments after his knee surgery, which took place in late March or early April 2012. At the next court date, defendant asked the court why his attorney did not present evidence of those appointments, apparently to create an alibi for the dates and times on which the sexual abuse took place because he was attending therapy on those days. Defendant also said he sought time sheets to establish he was not coaching track during that time period.

¶ 42    The physical therapy records would not have aided defendant's case. The records of defendant's physical therapy appointments attached to defendant's amended motion for a new trial listed a total of nine appointments through April, May, and June 2012. None of the records we have examined show any time of day that the therapy was either scheduled for or performed. J.E. described four incidents of contact that occurred between the last week of April to June 2, 2012. More particularly, J.E. testified these incidents occurred during the last week in April, within the next week, a couple of weeks later in May, and June 2 after a track meet. Specific dates and times of that contact were not testified to nor was that specificity required because the statute of limitations is not in question and, therefore, the date of a crime was not an essential element of the offense. *People v. Letcher*, 386 Ill. App. 3d 327, 331 (2008). One specific date was testified to and that was May 7, the date defendant resumed driving. Thus, even if evidence of defendant's physical therapy appointments had been presented, at best, it would only tend to prove the offending conduct might not have occurred on the day of therapy. However, that would not account for the remaining days during this period where no therapy took place. Moreover, even if the dates did coincide, it was possible for the incidents to have occurred on the same days because the records of defendant's physical therapy do not list the times of the appointments. And, even if the time of the therapy could be established, this would not account for the remaining days when the contact could have taken place.

¶ 43    The same reasoning applies to the coaching time sheets. Defendant contended those documents would indicate that he "was not coaching track during more than half of [the] time period" of late April to early June when the incidents occurred. However, the fact that defendant was not coaching the track team would not have precluded him from having contact with J.E. As described by J.E., the first incident occurred following an after-school meeting about track and the second incident also took place after school. Defendant's status as the track coach is not relevant to whether those encounters happened. Those records and the physical therapy records therefore would not have established, as defendant claims on appeal, that he "did not see J.E. in April or early May." Furthermore, the testimony of defendant's wife provided the evidence that defendant sought to introduce via the coaching time sheets; she stated at trial that defendant was not at the school or coaching track from the time of his knee surgery until May 7. However, the testimony did not indicate the offenses occurred in the course of, or after, the act of working as a teacher or coach. The evidence at trial allows for a reasonable inference that defendant could have encountered J.E., as she stated, during this time period without defendant acting as a teacher or coach at the time of the relevant encounter.

¶ 44    Finally, it must be noted that defendant admitted to all forms of contact described in J.E.'s testimony, as testified to at trial by Detective Hollendoner. Those statements, along with the

text evidence introduced at trial, are persuasive evidence that the failure to present the physical therapy records or coaching time sheets from the board of education would not have changed the outcome of this trial. The record shows that the trial court conducted a legally sufficient inquiry into defendant's claims of ineffective assistance of counsel. The court determined that counsel was not deficient in failing to present the physical therapy records or time sheets at trial and defendant was not prejudiced by the failure to present this evidence. Therefore, the court determined, in compliance with the requirements under *Krankel* and its progeny, that there is no merit to defendant's claim that counsel was ineffective on that basis.

¶ 45 Defendant's remaining contentions on appeal relate to the imposition of two fees. Consideration of whether the trial court properly imposed a fine or a fee is an issue that has become all too frequent and, in the judgment of most appellate justices, is an issue that can usually be resolved without expending appellate counsel's time and resources. We strongly urge the State and defense trial counsel to take the minimal time necessary to carefully review and examine the trial court's judgment order to determine whether the fees and fines reflected in the order are correct so as to avoid these forfeited issues on appeal.

¶ 46 Returning to the defendant's contention, he argues the $20 probable cause hearing fee and the $5 electronic citation fee were erroneously imposed and should be vacated. It is well-settled that a defendant forfeits an issue by failing to raise a contemporaneous objection in the trial court and also include the issue in a written postsentencing motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Defendant contends that even though he did not challenge the fines and fees order in the trial court, this argument can be raised now for the first time under the plain-error doctrine, which permits our review of sentencing errors in this manner because they may affect a defendant's substantive rights. *People v. Akins*, 2014 IL App (1st) 093418-B, ¶ 20. The rules of waiver also apply to the State, and where, as here, the State fails to argue that defendant has forfeited the issue, it has waived the forfeiture. See *People v. Reed*, 2016 IL App (1st) 140498, ¶ 13. We therefore address defendant's claims.

¶ 47 The first assessment challenged by defendant is the $20 probable cause hearing fee (55 ILCS 5/4-2002.1(a) (West 2014)), which applies in cases where a preliminary hearing is held to determine the existence of probable cause to believe that the accused has committed an offense. Defendant contends, and the State correctly agrees, that fee should not have been imposed in this case because he was charged via indictment and no probable cause hearing was held. See *People v. Guja*, 2016 IL App (1st) 140046, ¶ 69 (citing *People v. Smith*, 236 Ill. 2d 162, 174 (2010)).

¶ 48 Defendant also asserts, and the State concedes, that the $5 electronic citation fee should be vacated. Section 27.3 of the Clerk of Courts Act specifies that fee only applies to a defendant who is involved in "any traffic, misdemeanor, municipal ordinance, or conservation case." 705 ILCS 105/27.3e (West 2014). Because defendant was convicted of various felonies, the fee does not apply in this case. See *People v. Brown*, 2017 IL App (1st) 142877, ¶ 71.

¶ 49 Accordingly, the $20 probable cause hearing fee and $5 electronic citation fee are vacated. Defendant was assessed a total of $1449 in fines and fees. Pursuant to Illinois Supreme Court Rule 615(b)(1), we direct the clerk of the circuit court to correct the fines and fees order to reduce the amount owed to $1424. The judgment of the trial court is affirmed in all other respects.

¶ 50 A final observation: given that the State concedes that these assessments were imposed in error, we do not understand the apparent failure of the State and appellate counsel to

communicate and resolve these errors by moving for an agreed order in the trial court to correct the errors and eliminate the need to raise and brief additional issues on appeal. Again, we urge appellate counsel to cooperatively engage to efficiently resolve errors where there is no dispute so that scarce resources can be better directed to address disputed issues.

¶ 51   Affirmed in part, vacated in part; fines and fees order corrected.