2024 IL App (1st) 210798-U

No. 1-21-0798

Order filed May 28, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 CR 02212 02 |
| | ) | |
| DWAYNE REED, | ) | The Honorable |
| | ) | Stanley L. Hill, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1      *Held*: Defendant failed to show that the trial judge's failure to recuse himself during postconviction proceedings resulted in plain error. In addition, the evidence set forth at the evidentiary hearing on defendant's petition supported the finding that trial counsel was not ineffective.

¶ 2      Defendant Dwayne Reed appeals from the trial court's order dismissing his postconviction petition following an evidentiary hearing under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant asserts that the trial judge

possessed pertinent knowledge outside the record and, thus, Illinois Supreme Court Rule 63 (eff. Feb. 2, 2017), required the judge to recuse himself from the postconviction proceedings.[1] Defendant also challenges the court's determination that trial counsel properly informed him that he would be required to serve 85% of his sentence for aggravated kidnaping and did not lead him to reject plea offers based on erroneous or incomplete information. For the following reasons, we affirm the trial court's judgment.

¶ 3                                    I. Background

¶ 4      Defendant was charged with offenses that occurred on March 11, 2008. Specifically, he was charged with armed robbery (720 ILCS 5/18-2(A)(2) (West 2008)), aggravated unlawful restraint (720 ILCS 5/10-3.1 (West 2008)), aggravated kidnaping based on the concealment of his identity (720 ILCS 5/10-2(a)(4) (West 2008)), and, pertinent to this dispute, aggravated kidnaping based on his possession of a firearm during the offense (720 ILCS 5/10-2(a)(6) (West 2008)). While both aggravated kidnaping charges were Class X felonies, the latter charge required that a 15-year firearm enhancement be added to any sentence. 720 ILCS 5/10-2(b) (West 2012). Thus, defendant was facing a minimum sentence of 21 years for that offense. See 730 ILCS 5/5-4.5-25 (West 2012) (setting forth a Class X sentencing range of 6 to 30 years in prison). Additionally, defendant could not receive more than 4.5 days of good conduct credit per month to offset any sentence for aggravated kidnaping. 730 ILCS 5/3-6 3(a)(2)(ii) (2008). Stated differently, he would be required to serve at least 85% of that sentence.

¶ 5                                  A. Plea Negotiations

¶ 6      Before trial, defendant was represented by private attorney Ezra Hemphill, who was later joined by John Benson. This case originally came before the Honorable Thomas M. Tucker but

---

[1] Supreme Court Rule 63 was repealed on January 1, 2023.

was later transferred to the Honorable Stanley L. Hill. Although plea conferences occurred before both judges (Ill. S. Ct. R. 402 (eff. July 1, 2012)), no plea agreement was reached. No contemporaneous record was made of any plea offer either.

¶ 7                                    B. Trial

¶ 8      The evidence at trial generally showed that at about 8:30 p.m. on March 11, 2008, Bianca Muniz was closing the currency exchange where she worked. After she had manually locked the front door, two men pried it open. She could see only one man's face, as the other wore a hood. According to Muniz, one man pointed a small gun at her head and directed her to the back, where she was forced to lay face down on the ground while her hands and ankles were tied with duct tape. Muniz, a non-smoker, noted the scent of cigarette smoke. When the men eventually left, Muniz freed herself and called the police. A large amount of cash was missing, and the police later recovered a partially burnt cigarette from the floor. DNA from the cigarette matched defendant's DNA profile. Following trial, the court found defendant guilty of all charges.

¶ 9      At sentencing, the trial court informed defendant that he would be statutorily required to serve 85% of any sentence for aggravated kidnaping. Sentences for other counts would be served at 50%. The court then imposed four concurrent 25-year sentences. Subsequently, the court found that aggravated unlawful restraint merged into aggravated kidnaping and vacated the conviction for the former offense. In addition, the court later reduced defendant's remaining sentences to 22 years in prison.

¶ 10                                   C. Direct Appeal

¶ 11     On direct appeal, we rejected defendant's assertion that his convictions for aggravated robbery and aggravated kidnaping while in possession of a firearm had to be reduced to simple robbery and kidnaping. *People v. Reed*, 2016 IL App (1st) 142174-U. We agreed, however, that

the conviction for aggravated kidnaping based on the concealment of his identity was required to be vacated under the one-act, one-crime doctrine. *Id.*

¶ 12                                 D. Postconviction Petition

¶ 13    In March 2018, defendant filed a *pro se* postconviction petition alleging that trial counsel was ineffective for telling him he would have to serve 50% of his sentence and for not informing him that he would actually have to serve at least 85%. Defendant alleged that this failing impacted his decision to reject plea offers made before trial.

¶ 14    According to the petition, Judge Tucker said he would impose a 10-year sentence, without a firearm enhancement, to be served at 50%, if defendant proceeded to a bench trial. In addition, no "deal or issue" as to aggravated kidnaping was raised before Judge Tucker. Before Judge Hill, the State offered defendant a 25-year-sentence to be served at 50%. Judge Hill himself offered defendant a 22-year sentence to be served at 50%. But see *People v. Donelson*, 2011 IL App (1st) 092594, ¶ 14 (stating that the trial court is not party to a plea agreement). We note that the petition did not specify which counts the aforementioned plea offers applied to, but did allege that Hemphill said Judge Hill would not come off the 15-year firearm enhancement for armed robbery. The petition further alleged that the only issue discussed at the plea conferences was whether he would be required to serve a 15-year firearm enhancement for armed robbery. Conversely, no one mentioned that he would be required to serve 85% of any sentence. Had he known, he would have accepted Judge Hill's offer or the State's offer.

¶ 15    Judge Hill appointed postconviction counsel and advanced the petition to the second stage following the passage of 90 days. He also suggested that defendant's complaint would be cured if the court immediately imposed a 22-year sentence, to be served at 50%, without altering any findings of guilt. In addition, the State moved to dismiss the petition, arguing, among other

things, that defendant could not establish prejudice because he did not allege which counts the plea offers pertained to. If defendant was offered statutorily unauthorized sentencing credit for aggravated kidnaping, he would have to show that the trial court or the State would not have corrected that error before the defective plea offer could be implemented.

¶ 16     At a hearing on October 18, 2019, the State said it could not agree to a percentage of good conduct credit that deviated from statute. In addition, postconviction counsel agreed that the petition did not specify the details of the State's offer. Judge Hill speculated that because he would not have offered defendant credit at 50% if that was not authorized, "there must have been a piece there that said we're reducing it down in such a way that you can give day for day at 50 percent." That being said, Judge Hill, lacked "any specific recollection of who said what."

¶ 17     On December 13, 2019, Judge Hill denied the State's motion to dismiss. In doing so, he recalled that in pretrial negotiations, there was a question of whether the State would be able to prove a firearm was used in the offense. Additionally, he recalled that "the State was prepared in pretrial to dismiss that enhanced situation," but he was unsure whether trial counsel advised defendant of that. Furthermore, Judge Hill stated, "I did recommend that if he pled guilty that I would sentence him I think to 22 years."

¶ 18     A week later, Judge Hill acknowledged that he had "some personal knowledge of this" since he had participated in plea conferences and observed that postconviction counsel was now saying that the plea offers applied to all charges. The court rejected the State's argument that defendant needed to amend his petition to include that allegation.

¶ 19     At a hearing on October 16, 2020, Judge Hill, consulting his general practices, speculated at length as to what the details of the plea offers may have been. On October 29, 2020, he further speculated and found that certain internal records tendered by the State refreshed his recollection.

During that hearing, Judge Hill also told postconviction counsel that he did not have the right to call a State's Attorney to find out what the offer was:

"You have the offer from me; the last offer was 22 years. That comes from me, and I'm telling you, that's what I offered him. That's borne out by these files. So it's irrelevant what a State's Attorney may have said regarding that because it's right here, and you've got me saying the offer, is 25 — I mean, sorry, 22 years on armed robbery. Period."

Judge Hill acknowledged, however, that the State's records did not specifically mention "aggravated kidnaping." Moreover, he found that based on the practice in Cook County, the aggravated kidnaping charges and unlawful restraint charge probably would have been dismissed if defendant pled guilty to armed robbery in exchange for 22 years or 25 years in prison. When the State observed, "[w]e don't know that," Judge Hill responded, "I'm telling you, based upon what I'm thinking was the case." He also speculated that defendant went to trial because he did not believe the State would be able to prove a firearm was involved:

"I don't think it was about the 85%; I think it was about the fact that he thought he might be able to get off with just straight robbery. Period. He was bargaining for 15 years off."

Judge Hill nonetheless clarified that he had an open mind.

¶ 20    On June 28, 2021, the State objected to postconviction counsel's intent to use the transcript of the October 29th hearing at the upcoming evidentiary hearing:

"He is asking you, your Honor, to be a witness in your own case that you're sitting as a trier of fact. We – I do not have the opportunity to cross-exam you, and that is not the only statement that I believe that counsel wants to use."

Over the State's objection, the court granted postconviction counsel's request for the court to take judicial notice of the court's statement that the court had offered defendant 22 years and the State had offered 25 years.

¶ 21    The State also objected to postconviction counsel's use of Judge Hill's prior statement that counsel could not call an assistant State's Attorney to testify because Judge Hill had already determined what the offer had been. The State argued that another witness "may very well give you a different version of that." Judge Hill responded that while he did not know what defendant's trial lawyers had told him, Judge Hill's recollection was refreshed.

¶ 22    At the evidentiary hearing on defendant's petition, postconviction counsel asked that the court "consider not only the evidence presented, but also your Honor's knowledge and experience with the case as the trial judge who presided over the trial as well as guilty-plea negotiations and the 402 conferences."

¶ 23    Defendant testified that both Hemphill and Benson were authorized to negotiate on his behalf, and they spoke with him after every court date. Hemphill told defendant that if he chose a bench trial, Judge Tucker would sentence him to 10 years in prison, without a firearm enhancement, because no firearm was recovered. Hemphill also said that the armed robbery count would be served at 50%. That being said, Hemphill never explained what would happen to the aggravated kidnaping charges if he accepted the plea offer.

¶ 24    Following hearings before Judge Hill, Hemphill told defendant that the State had offered "25 years at 50%, since no one got hurt," and that "Judge Hill was offering 22 years to be served at 50%." Hemphill did not convey that the offer was for a particular offense but indicated that it pertained to all of the charges. Hemphill also said, however, that Judge Hill "wasn't coming off the gun enhancement."

¶ 25      Defendant testified that while Benson was not present for the aforementioned conversations with Hemphill, Benson spoke to defendant, in the presence of Hemphill, on June 27, 2012. At that time, Benson told defendant he could not accept Judge Tucker's offer of 10 years in prison because there was a lack of legal clarity surrounding the firearm enhancement and a guilty plea to that offer would be unconstitutional. Defendant did not recall whether he had any discussions with Benson about plea negotiations after Judge Hill took over the case.

¶ 26      According to defendant, his attorneys had said that the "whole entire case" would be served at 50%. They never discussed the aggravated kidnaping counts or said he would be required to serve 85% of any sentence for those offenses. At sentencing, he learned for the first time that he would be required to serve 85% of his aggravated kidnaping sentences. Had defendant known, he would have accepted Judge Hill's plea offer. Yet, defendant also acknowledged that a primary concern during plea negotiations was whether or not he would be subject to a firearm enhancement. Furthermore, his subsequent motion for a new sentence, as well as *pro se* letters sent to the court, did not raise the amount of available good conduct credit as an issue. Moreover, while testifying on the State's behalf in a separate murder-for-hire case, defendant acknowledged that he had not wanted to accept the offers in this case and that a 25-year sentence was too long.

¶ 27      Benson testified that after he was appointed to represent defendant, he wrote down the charges, the sentencing ranges, the applicable firearm enhancements and the percentage of available good conduct credit. Specifically, he wrote that aggravated kidnaping would be served at 85%. Benson testified, "[t]he reason I do this is the first thing a client wants to know is: What am I facing? The lawyer always has to know what the sentencing range is." Benson discussed the sentencing range with defendant multiple times. On August 10, 2012, in particular, Benson met

8

with defendant in jail to discuss sentencing. Benson, in the presence of Hemphill, told defendant that he would have to serve 85% of a sentence for aggravated kidnaping.

¶ 28    As to plea negotiations, Benson told defendant that "[t]he courtroom prosecutors would never agree to come off the aggravated kidnaping; therefore, we could never get out from under the 85 percent." During Benson's conversations with multiple prosecutors, he never received "an offer that did not involve aggravated kidnaping." That being said, Benson was not present at every court date during defendant's prosecution, and he was not aware whether defendant otherwise received such an offer. While Benson had notes regarding the sentencing scheme, he had no notes regarding plea offers.

¶ 29    Defendant's father, mother and sister, all of whom had spoken with defense counsel, testified that they believed defendant would serve 50% of his sentence and did not learn until sentencing that he would have to serve 85%.

¶ 30    After considering the forgoing evidence, the trial court denied defendant's petition. Judge Hill believed that the 22-year plea offer contemplated that the aggravated kidnaping counts would be nol-prossed and recognized that Benson's recollection differed. Benson testified credibly, however, that he told defendant he would be required to serve 85% of any sentence for aggravated kidnaping. Defendant had simply chosen to forget that Benson relayed this information. Moreover, Judge Hill believed that defendant's concern during plea negotiations was avoiding the 15-year firearm enhancement for armed robbery, although "none of that's come out in this hearing."

¶ 31                              II. Analysis

¶ 32                              A. Recusal

¶ 33      On appeal, defendant first asserts that Judge Hill abused his discretion by failing to recuse himself from postconviction proceedings because he possessed, and relied upon, personal knowledge outside of the record. Defendant asserts that Judge Hill's personal knowledge of off-the-record plea conferences was pertinent to the factual dispute surrounding defendant's claim that he would have accepted a plea offer had trial counsel told him that he would be required to serve 85%, rather than 50%, of any sentence for aggravated kidnaping. See Ill. S. Ct. R. 63(c)(1)(a) (Feb. 2, 2017) (stating that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has***personal knowledge of disputed evidentiary facts concerning the proceeding"); see also *People v. Washington*, 38 Ill. 2d 446, 448, 450-51 (1967) (in reversing for an evidentiary hearing on the defendant's postconviction claim, the supreme court found that the proceeding should be transferred to a different judge because he would be a material witness or have knowledge outside the record regarding the truth of the allegations that the defense, the State and the judge had agreed to a 14-year sentence); *People v. Wilson*, 37 Ill. 2d 617, 621 (1967) (finding that the trial judge failed to recuse himself from a postconviction proceeding where the defendant relied on alleged *in camera* conversations between his attorney and the court and the trial judge would be a material witness or have knowledge outside the record as to the veracity of the allegations).[2]

¶ 34      Here, Judge Hill referred extensively to his recollection of what ensued during plea negotiations, matters outside of the record. Yet, defendant acknowledges that he did not ask the

---

[2]      We note that the parties have not addressed whether defendant, as opposed to the trial court itself, may invoke Rule 63. See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45 (stating that "[w]hether a judge should recuse himself is a decision in Illinois that rests *exclusively within the determination of the individual judge*" and "[t]he Judicial Code, which is a part of our rules, says nothing that would give the impression that its provisions could be used by a party or his lawyer as a means to force a judge to recuse himself, once the judge does not do so on his own").

judge to recuse himself or disregard his personal knowledge. Instead, defendant urged the court to consider his personal knowledge, over the State's objection. See *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 46 (stating that an issue is forfeited absent a contemporaneous objection). Defendant therefor acknowledges that he not only forfeited this error, but invited it.

¶ 35    Nonetheless, defendant observes that the State has not raised waiver based on the invited error doctrine, only simple forfeiture. Defendant argues that as a result, the State has forfeited any reliance on that doctrine. See *Id*. (recognizing that the State may waive forfeiture). In addition, he asserts that the plain error doctrine overcomes his mere forfeiture of this contention. Plain error exists when either (1) the evidence is so closely balanced or (2) the error was so serious as to deny the defendant a fair and impartial trial. *People v. Hutt*, 2023 IL 128170, ¶ 28.

¶ 36    Defendant has cited no authority supporting his suggestion that the plain error doctrine applies in postconviction proceedings. See *People v. Davis*, 156 Ill. 2d 149, 159 (1993) (declining to apply plain error in the context of postconviction proceedings); see also *People v. Gibson*, 2021 IL App (1st) 190137, ¶ 16 (stating that "the plain-error doctrine does not apply in cases that involve invited error"). In addition, defendant has not developed an argument that the court violated due process in this instance or cited authority supporting the suggestion that a violation of Rule 63 in and of itself constitutes second prong plain error. *Cf. People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962) (stating on direct appeal that a trial judge's deliberations "are limited to the record made before him during the course of the trial" and that "[a] determination made by the trial judge *** based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law"). Absent a thorough cohesive argument as to how the court's conduct would amount to second-prong plain error under these circumstances, we find his contention remains forfeited. Ill. S. Ct.

R. 341(h)(7) (eff. Oct. 1, 2020) (stating that points not argued are forfeited); *People v. Bell*, 2021 IL App (1st) 190366, ¶ 117 (recognizing that arguments not sufficiently developed are forfeited); *People v. Jacobs*, 405 Ill. App. 3d 210, 218 (2010) (recognizing that a reviewing court is entitled to clearly defined issues supported by pertinent authority and cohesive arguments).[3]

¶ 37                                    II.  Ineffective Assistance of Counsel

¶ 38    We now address defendant's assertion that trial counsel was ineffective.

¶ 39    The Act provides a statutory vehicle for defendants to assert substantial violations of their constitutional rights that occurred at trial. *People v. Robinson*, 2020 IL 123849, ¶ 42. At a third-stage evidentiary hearing, the defendant has the burden of demonstrating by a preponderance of the evidence that a substantial violation has occurred. *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 38. Additionally, the trial court may make determinations regarding the credibility and reliability of the evidence (*Robinson*, 2020 IL 123849, ¶ 61), and resolve conflicts in the evidence (*People v. Domagala*, 2013 IL 113688, ¶ 34). Ultimately, the trial court must decide whether the evidence shows that the defendant is, in fact, entitled to postconviction relief. *Id*. We will not reverse the court's determination unless it is against the manifest weight of the evidence. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 40    The right to effective counsel applies to the plea-bargaining process and a defendant's decision to reject a plea offer. *People v. Hale*, 2013 IL 113140, ¶¶ 16-18. A defendant has the right to be reasonably informed as to the direct consequences of accepting or rejecting the State's plea offer. *People v. Curry*, 178 Ill. 2d 509, 528 (1997) (abrogated on other grounds by *Hale*, 2013 IL 113140, ¶ 20); *cf. People v. Burge*, 2021 IL 125642, ¶ 38 (recognizing that due process does not require a defendant to be informed about the collateral consequences of a guilty plea).

---

[3] We also note that defendant has not suggested that postconviction counsel provided unreasonable assistance by asking the court to consider matters outside the record.

¶ 41    To demonstrate that trial counsel was ineffective, a defendant must show both that counsel's performance was deficient, and that this deficient performance resulted in prejudice. *People v. Moore*, 2020 IL 124538, ¶ 29. More specifically, the defendant must establish that his counsel's assistance was objectively unreasonable and that a reasonable probability exists that the result of proceedings would have been different absent counsel's deficiency. *People v. Nicholson*, 2021 IL App (3d) 180010, ¶ 15. In the context of a rejected plea offer, the defendant must show a reasonable probability exists that he would have accepted the offer absent counsel's deficient advice (*Curry*, 178 Ill. 2d at 531), and that he would have entered the plea without the prosecutor canceling the offer or the court refusing to accept it (*Hale*, 2013 IL 113140, ¶¶ 19-20).

¶ 42    Here, the record supports the trial court's determination that trial counsel informed defendant before trial that he would be required to serve 85% of any sentence for aggravated kidnaping. The court found that Benson testified credibly in that regard and nothing in the record renders that finding unreasonable. The trial court was not required to find that defendant's self-serving testimony to the contrary was more credible. In addition, defendant's family members were not present for all conversations between defendant and counsel, and could not rebut Benson's testimony that he informed defendant he would be required to serve 85%. Even if they could rebut that testimony, the court was not required to find defendant's family members were entirely disinterested.

¶ 43    Defendant nonetheless argues that Judge Hill's belief that the plea offers involved the dismissal of the aggravated kidnaping counts undermined the credibility of Benson's testimony to the contrary. Defendant argues "it was impossible for counsel to accurately inform the petitioner of the terms of the offer because counsel himself did not know what those terms were."

¶ 44    First, we observe that plaintiff's petition did not assert that he was unaware of the plea offers' terms; rather, the petition asserted only that he did not understand what would happen outside those offers. We find defendant's attempt to raise a new claim on appeal to be disingenuous. Defendant never sought to amend his petition to include such a claim. See 725 ILCS 5/122-3 (West 2020) (stating that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived").

¶ 45    Defendant also conflates Judge Hill's challenge to Benson's memory with a challenge to Benson's contemporaneous understanding of the plea offers. Any inability to remember the details of the plea offers does not mean that Benson failed to understand the offers in the first instance. Furthermore, any defect in Benson's memory regarding the contours of the offers did not require the court to reject Benson's testimony that he told defendant that he would serve 85% if sentenced for aggravated kidnaping. See *People v. Gray*, 2017 IL 120958, ¶ 47 (recognizing that the trial court is entitled to determine when, if ever, the witness testified credibility and that flaws in part of the testimony do not necessarily destroy the credibility of the whole). Although defendant notes that the State argued below that proving the contours of the offers was crucial to his ability to show prejudice, defendant ignores that he argued below that the lack of detail did not defeat his claim. In any event, the contours of the offers are not crucial here given that defendant's claim is otherwise defective.

¶ 46    Defendant further argues that because Hemphill did not testify at the evidentiary hearing, defendant's testimony that Hemphill never told him he would have to serve 85% of his aggravated kidnaping sentence remains unrebutted. Yet, we fail to see how the lack of testimony from Hemphill negates Benson's testimony that he informed defendant of this fact.

¶ 47    Here, the trial court's finding that Benson told defendant he would have to serve 85% percent of a sentence for aggravated kidnaping was not against the manifest weight of the evidence. It follows that trial counsel's performance was neither deficient nor prejudicial in this regard.

¶ 48                                    III. Conclusion

¶ 49    Defendant has not demonstrated that the trial court's reference to off-the-record plea discussions amounted to plain error. In addition, the evidence supported the trial court's determination that trial counsel was not ineffective.

¶ 50    For the forgoing reasons, we affirm the trial court's judgment.

¶ 51    Affirmed.