2021 IL App (3d) 180010

Opinion filed January 29, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Ninth Judicial Circuit, Knox County, Illinois. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0010 Circuit No. 12-CF-24 |
| STERLING M. NICHOLSON, | ) ) ) | The Honorable Paul L. Mangieri |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices O'BRIEN and WRIGHT concurred in the judgment and opinion.

**OPINION**

¶ 1      The State charged petitioner Sterling M. Nicholson with three counts of attempted first

degree murder (720 ILCS 5/8-4, 9-1(a)(1)-(3) (West 2012)), one count of aggravated domestic

battery (*id.* § 12-3.3(a)), and one count of aggravated battery (*id.* § 12-3.05(a)(1)). A jury

acquitted Nicholson on all counts of attempted first degree murder but found him guilty of

aggravated domestic battery and aggravated battery. The trial court entered convictions on each

of those counts and sentenced him to 25 years' imprisonment for aggravated domestic battery

and 10 years' imprisonment for aggravated battery, to be served consecutively. On direct appeal,

we affirmed Nicholson's conviction for aggravated domestic battery and vacated his conviction for aggravated battery.

¶ 2    Nicholson now appeals the third-stage dismissal of his postconviction petition. He alleges that his trial counsel was ineffective in failing to inform him that he was eligible for Class X sentencing for his aggravated domestic battery conviction. For the following reasons, we reverse the trial court's decision and remand the matter with instructions for resentencing.

¶ 3                                    BACKGROUND

¶ 4    In this appeal, Nicholson challenges only the trial court's decision following the third-stage evidentiary hearing on his petition for postconviction relief. Therefore, we incorporate by reference our prior decision, where we described the evidence in detail. *People v. Nicholson*, 2015 IL App (3d) 130463-U, ¶¶ 9-21. We repeat those facts necessary to resolve the claim of ineffective assistance of counsel. At trial, the State's evidence established that Nicholson "beat up" his then-girlfriend Mary Cannon, intentionally causing her great bodily harm. Although Cannon could not remember the events leading to her injuries when she testified, four State witnesses testified that Cannon identified Nicholson as her assailant immediately after suffering the injuries. In his own defense, Nicholson testified that a friend, Ollie Howell, struck Cannon in the mouth, following which Cannon and Howell had a violent altercation. Howell testified that he saw Nicholson strike Cannon after an argument over Cannon's previous boyfriend.

¶ 5    The jury found Nicholson not guilty of the three counts of attempted murder and guilty of aggravated domestic battery and aggravated battery. At the sentencing hearing, the trial court found that Nicholson was older than 21 years old and had seven prior felony convictions—six separate convictions for Class 2 felonies and one conviction for a Class 1 felony—over a period of roughly 20 years from 1993. Considering his age and criminal history, the court sentenced

2

Nicholson to 20 years' imprisonment as a Class X offender under the general recidivism provisions of the Unified Code of Corrections (730 ILCS 5/5-4.5-95 (2012)). During his sentencing, Nicholson interrupted the court and stated:

> "But my—my—my question would be of if I was informed of all this prior to when the State offered me the six years for the three counts of attempted murder, one aggravated domestic, and one aggravated battery, I would have considered the—I would have considered that plea more earnestly."

¶ 6        Nicholson filed a motion to reconsider his sentence. In the motion, Nicholson's trial counsel acknowledged that he failed to advise Nicholson of his Class X sentencing eligibility. Trial counsel admitted that he was unaware of Nicholson's eligibility. The trial court denied the motion.

¶ 7        On direct appeal, Nicholson raised no issues related to trial counsel's failure to inform him of the Class X sentencing. Instead, he challenged the trial court's ruling on two evidentiary matters and his conviction for aggravated battery. We affirmed his conviction for aggravated domestic battery but vacated his conviction for aggravated battery as violating the principles of one-act, one-crime.

¶ 8        Subsequently, Nicholson filed a *pro se* petition for postconviction relief that advanced to the second stage. In his amended petition, Nicholson raised six claims, including a claim of ineffective assistance of trial counsel. In that claim, he argued that trial counsel informed him of a plea offer from the State. The offer was for six years' imprisonment for the aggravated domestic battery. In exchange, the State would dismiss the charges of attempted murder and aggravated battery. Nicholson alleged that trial counsel told him the State could not prove attempted murder and the most he would face on the aggravated battery—the next serious

3

offense, according to counsel—was 14 years' imprisonment if he was convicted. Nicholson claimed that because of trial counsel's advice, he rejected the State's offer. He argued that trial counsel was ineffective because counsel should have known that he was facing Class X sentencing on the aggravated domestic battery.

¶ 9　　　The trial court advanced the petition to a third-stage evidentiary hearing, where Nicholson and trial counsel testified. Nicholson testified that counsel said the State could not prove the attempted murder. He wanted to take the State's offer, but counsel dissuaded him. Counsel said that it was unlikely that Nicholson would get a sentence greater than six years on the aggravated domestic battery. Nicholson stated that he would have considered the sentence more "earnestly" if he had known he was still facing 25 years: "if I'd known that all these things were possible, I most definitely would've taken the six years, point-blank."

¶ 10　　　Trial counsel testified that he was unaware of the statutory enhancement at the time and failed to advise Nicholson on the possibility of an extended sentence. But counsel stated that he did not "urge" Nicholson to reject the plea. He could not recall the details of his advice but believed that he would have advised Nicholson on the relative strengths and weaknesses of the State's evidence for each count.

¶ 11　　　The trial court denied Nicholson relief, finding that trial counsel's advice fell short of the competence required by the first prong of the *Strickland* test but not finding the prejudice demanded for the second prong. The court stated that while Nicholson "was receiving a 6-year offer and a dismissal of the attempted murder charge, [he] rejected a 6-year sentence and subjected himself to the possibility that he could receive up to 30 years if he was found guilty of attempted murder." The court concluded that, regardless of counsel's advice, Nicholson decided to reject a "6-year offer with the understanding that [he] could be facing up to 30 years."

4

¶ 12        Nicholson appeals that decision.

¶ 13        ANALYSIS

¶ 14        This case comes to us on appeal from a third-stage evidentiary hearing under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The Act provides a three-stage process by which a petitioner may allege a substantial deprivation of a constitutional right. *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶ 51. At the third stage, the circuit courts hold fact-finding evidentiary hearings where they may make credibility determinations. *Id.* After such hearings, the courts' fact-finding and credibility decisions will not be reversed unless they were manifestly erroneous. *Id.* But, we apply a mixed standard of review to claims of ineffective assistance of counsel. *People v. Peterson*, 2015 IL App (3d) 130157, ¶ 222. The court's fact-finding and credibility assessments in deciding whether or not counsel was ineffective will be reviewed under the ordinary standard for the dismissal of a postconviction petition following the third-stage evidentiary hearing. See *id.* "However, the ultimate question of whether counsel's actions support a claim of ineffective assistance is a question of law that is subject to *de novo* review on appeal." *Id.*; see also *People v. Hale*, 2013 IL 113140 ¶ 15 (applying a *de novo* standard of review to a claim of ineffective assistance of counsel).

¶ 15        The Illinois Constitution, like the United States Constitution, guarantees all criminal defendants the right to effective assistance of counsel. *Hale*, 2013 IL 113140 ¶ 15. This right extends to the plea-bargaining process, including situations where a defendant rejects a guilty plea offer and subsequently receives a fair trial. *Id.* ¶ 16. Claims of ineffective assistance of counsel are reviewed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hale*, 2013 IL 113140 , ¶ 15. To prevail on such a claim, a defendant must show that counsel's performance was both deficient and prejudicial. *People v. Curry*, 178 Ill. 2d 509, 519

5

(1997) "More precisely, a defendant must show that his attorney's assistance was objectively unreasonable under prevailing professional norms, and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶ 16    Nicholson contends that trial counsel's performance was unreasonable because counsel failed to inform him that he was subject to Class X sentencing under section 5-4.5-95(b). The trial court agreed and found that trial counsel's failure was unreasonable and, thus, deficient performance. We agree with the court's finding of deficient performance. Section 5-4.5-95(b) states in relevant part:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class
> 2 felony, after having twice been convicted in any state or federal court of an
> offense that contains the same elements as an offense now *** classified in
> Illinois as a Class 2 or greater Class felony and those charges are separately
> brought and tried and arise out of different series of acts, that defendant shall
> be sentenced as a Class X offender." 730 ILCS 5/5-4.5-95(b) (West 2012).

¶ 17    Given Nicholson's age and criminal history, Section 5-4.5-95(b) elevated his aggravated domestic battery Class 2 conviction to Class X sentencing. In Nicholson's motion for reconsideration of sentence, counsel admitted that he was unaware that section 5-4.5-95(b) applied to the conviction. At the third-stage hearing, counsel also admitted that he had not informed Nicholson of his Class X sentencing eligibility. "A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis in original.) *Curry*, 178 Ill. 2d at 528. Part of this obligation is satisfied when defense counsel accurately informs his client of the maximum and

6

minimum sentences that can be imposed for the offenses charged by the State. See *People v. Blommaert*, 237 Ill. App. 3d 811, 817 (1992). Consequently, trial counsel's performance was deficient when he failed to inform Nicholson's that he was eligible for Class X sentencing under section 5-4.5-95(b). See *Curry*, 178 Ill. 2d at 528.

¶ 18     The State does not dispute this conclusion, arguing instead that the claim of ineffectiveness is forfeited because it was not raised on direct appeal. We disagree. "A postconviction claim that depends on matters outside the record *** is not ordinarily forfeited because such matters may not be raised on direct appeal." *People v. Brown*, 2014 IL App (1st) 122549, ¶ 41 (citing *People v. English*, 2013 IL 112890, ¶ 22). Nicholson's claim depends on the specific terms of the State's plea offer—the details of said offer entered the record only after Nicholson filed his petition and affidavit. Therefore, we find the argument is not forfeited.

¶ 19     Having found counsel's performance was deficient, we now turn to the second prong of the *Strickland* test: whether counsel's performance was prejudicial to Nicholson. To establish the second prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In this case, where the claim is for a rejected guilty plea offer, Nicholson must show that (1) but for his counsel's deficient advice, he would have accepted the plea offer, (2) the plea would have been entered without the prosecution cancelling it, (3) the trial court would have accepted the bargain, assuming that it had discretion under state law to accept or reject it, and (4) " 'the end result of the criminal process would have been more favorable by reason of a plea.' " *Hale*, 2013 IL 113140, ¶ 19 (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

7

¶ 20          Here, there is no question that a 6-year prison sentence, which was the minimum sentence Nicholson could have received for aggravated domestic battery if convicted and sentenced as a Class X offender, would have been more favorable than the 25 years that he ultimately received. There is also no indication that the plea agreement would not have been accepted and entered by the trial court, as six years was a lawful Class X term, and the judge's knowledge of the details of the offense at this point in the proceedings, prior to any trial, would have been necessarily limited. Similarly, there is no indication that the State would have canceled the agreement.

¶ 21          The only significant factor at issue in establishing whether *Strickland* prejudice occurred is whether there was a reasonable probability that Nicholson would have accepted the State's offer but for counsel's erroneous advice. The court concluded that Nicholson would not have accepted the plea offer, regardless of counsel's advice, because Nicholson rejected the offer even though he knew he could be facing 30 years on the attempted murder charges. Put differently, the court assumed that the two charges were interchangeable to Nicholson because they had the same sentence range. But, to Nicholson, they were not interchangeable because he reasonably did not believe that he was facing 30 years on any of the pending charges.

¶ 22          Nicholson was not simply advised by his attorney that the State could not meet its burden of proving the attempted murder but was also thoroughly informed of the evidentiary basis for that opinion. This assessment proved true and valid when the jury found him not guilty on those charges. With regard to the aggravated domestic battery, he was also erroneously told that probation was a possibility and that he was facing a maximum of 14 years. Counsel's optimistic, fact-supported presentation of the likely outcome of the charges and the associated potential sentences was the advice on which Nicholson would have reasonably relied in rejecting the plea offer. See, *e.g.*, *Lee v. United States*, 582 U.S.___, ___, 137 S. Ct. 1958, 1967 (2017) ("where we

are instead asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking"). Consider now altering this rosy picture by removing the possibility of probation and increasing the maximum sentence for the aggravated domestic battery to 25 years. Nicholson would now understand that, given his eligibility for Class X sentencing, the plea offer presented his best possible outcome. We conclude that counsel's erroneous advice—omitting Class X sentencing and, instead, advising Nicholson that in a worst-case scenario he was facing a Class 2 sentence that included the possibility of parole—was the deciding factor leading him to reject the State's six-year plea offer. Absent counsel's advice, which subjectively affected his decision-making, we find it objectively rational that Nicholson would have accepted the guilty plea offer—and thus, was prejudiced by counsel's advice.

¶ 23    The State argues that Nicholson could not objectively show that he would have accepted plea deal. Citing *Hale*, the State speculates that Nicholson rejected the plea, hoping that the jury would also acquit him of the aggravated domestic battery. But the *Hale* court found the "defendant clearly and expressly, on many occasions, professed his innocence and indicated a desire for trial," starting from his bond reduction hearing and continuing onto his trial. (Emphasis omitted.) *Hale*, 2013 IL 113140, ¶ 26. Similarly, the *Hale* court concluded that these assertions of innocence with his trial tactics showed the defendant "arguably believed" he could prevail on the charge for which the State made the offer. *Id.* ¶ 27. There is no similar evidence in this record. Beyond his trial testimony, the record does not contain "many occasions" where Nicholson asserted his innocence. Additionally, unlike the *Hale* court, we find Nicholson's trial testimony did " 'little, by itself, to answer the question of why he refused the plea offer in the first place.' " See *id.* The record simply does not demonstrate that Nicholson was driven by his

9

hope at vindication rather than a desire for the lowest possible sentence his attorney could secure. Had he known that he faced Class X sentencing, six years—the minimum possible sentence—would look like a gift.

¶ 24     Having found Nicholson presented a successful claim of ineffective assistance of counsel, we now turn to the question of his remedy. In *Lafler v. Cooper*, 566 U.S. 156, 171 (2012), the United States Supreme Court ruled that "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between" following an evidentiary hearing where a "defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." In so ruling, the court explained:

> "In implementing a remedy ***, the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here. Principles elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion. At this point, however, it suffices to note two considerations that are of relevance.
>
> First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to prescind (that is to say disregard) any information concerning the crime that was discovered after the plea offer was made. The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline

10

can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial." *Id.* at 171-72.

¶ 25    Applying the Court's reasoning in *Lafler*, we hold that the appropriate remedy is to remand the case to the trial court for resentencing. The trial court has the discretion to impose a sentence that is either (1) equal to the 6 years offered by the State or (2) greater than it but less than the 25 years Nicholson initially received. If it chooses the latter, the court *should* consider the length of time already served on his current sentence. Finally, in exercising its discretion, the court *may* consider facts relevant to the aggravated domestic battery conviction offense that were revealed after Nicholson's trial and sentencing hearing.

¶ 26                                    CONCLUSION

¶ 27    The judgment of the circuit court of Knox County is reversed, and the matter is remanded with instructions for resentencing.

¶ 28    Reversed and remanded.

**No. 3-18-0010**

| | |
|---|---|
| **Cite as:** | *People v. Nicholson*, 2021 IL App (3d) 180010 |
| **Decision Under Review:** | Appeal from the Circuit Court of Knox County, No. 12-CF-24; the Hon. Paul L. Mangieri, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Deepa Punjabi, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | John T. Pepmeyer, State's Attorney, of Galesburg (Patrick Delfino, Thomas D. Arado, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |