2023 IL App (1st) 221062

FOURTH DIVISION
Order filed: December 14, 2023

Nos. 1-22-1062 & 1-23-0220 (cons.)

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 9505 |
| | ) | |
| EDDIE HILL, | ) | Honorable |
| | ) | William G. Gamboney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Eddie Hill, appeals two circuit court orders, one granting his petition for

postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*

(West 2004)) and one resentencing him to thirty-seven years in prison for two counts of attempted

first-degree murder. The defendant contends that resentencing was an insufficient remedy for his

postconviction claim that trial counsel's misadvice caused him to reject a favorable plea offer and

that the sentence imposed following resentencing violated his right to due process and was

excessive. We agree with his second argument and reverse his sentence and remand with instructions.

¶ 2    In 2005, following a bench trial, the defendant was convicted of multiple counts of attempted first-degree murder, aggravated battery with a firearm, and aggravated battery, all stemming from the shooting of Cornelius Grant and Antonio Ingram in February 2000. At trial, the victims testified that, while in the stairwell of their apartment building, the defendant approached them with a revolver and asked them about joining the Gangster Disciples gang. When the victims expressed no interest, the defendant fired the revolver at the floor. The victims testified that they began running down the stairs, and the defendant fired shots at them, striking Grant in his index finger. The victims proceeded to a fourth-floor apartment, and the defendant pursued them, eventually shooting Grant in his chest and Ingram in his leg. According to the victims, they identified the defendant as the shooter from a photo array shown to them by the police shortly after the incident. At trial, Grant testified that, as a result of his gunshot wound, he was confined to a wheelchair, and Ingram testified that his femur had required a pin to repair the fracture he sustained. After finding the defendant guilty on many of the charges, including two counts of attempted first-degree murder, the court sentenced him to concurrent and consecutive prison terms totaling seventy-five years. On direct appeal, this court held that the defendant's aggravated battery convictions violated the one-act one-crime rule and, therefore, vacated those convictions and remanded for the defendant's mittimus to be amended to reflect two convictions for attempted first-degree murder with corresponding consecutive sentences of forty-five- and thirty-years' imprisonment. See *People v. Hill*, No. 1-06-0041 (unpublished order pursuant to Supreme Court Rule 23).

¶ 3    In 2009, the defendant, acting *pro se*, filed the instant petition for postconviction relief under the Act, raising, among others, a claim that his trial counsel rendered ineffective assistance by misadvising him regarding the maximum potential sentence, which caused him to reject a favorable plea offer. Specifically, the defendant alleged that, during a plea conference held pursuant to Supreme Court Rule 402 (eff. July 1, 1997), the State offered the defendant twenty years in prison in exchange for a guilty plea to the attempted-murder charges and that defense counsel advised him that he should reject the offer because the State's case was "purely circumstantial," he would likely win at trial, and if he was found guilty his sentences would run concurrently.

¶ 4    After the petition was dismissed at the second stage and that dismissal was reversed on appeal (see *People v. Hill*, 2014 IL App (1st) 131625-U (unpublished order pursuant to Supreme Court Rule 23)), the defendant, this time through new counsel, filed a supplemental petition further alleging that trial counsel had misinformed him that he was facing a sentencing range of six to thirty years in prison, when in reality the true maximum was much higher. The State moved to dismiss the supplemental petition. In a March 12, 2019, order, the court granted in part and denied in part the State's motion. In doing so, the court dismissed other claims that are not at issue in this appeal but allowed the defendant's claim regarding counsel's misadvice to proceed to a third-stage evidentiary hearing.

¶ 5    At that third-stage proceeding, the defendant testified that trial counsel advised him that he was facing six to thirty years in prison, with thirty years being the maximum. According to the defendant, counsel further informed him that the State had offered twenty years "for both the attempt murders." The defendant recalled that counsel advised him to reject the offer because the

State's case was beatable, and he rejected the offer based on that advice. When he heard that he was sentenced to a total of seventy-five years in prison his "heart stopped" because he believed he was facing a maximum of thirty years and did not understand what was going on. On cross-examination, the defendant further explained that he believed that the twenty-year offer came from the State and that he did not understand the difference between an offer from the State and a Rule 402 offer from the court.

¶ 6    Several other witnesses testified on the defendant's behalf and largely corroborated the defendant's account, with the defendant's sister, the mother of the defendant's child, and the defendant's girlfriend each testifying that the defendant's trial counsel had told them that the defendant was facing six to thirty years in prison. The defendant's trial counsel testified that he no longer possessed the file from the defendant's case, but he recalled that the sentencing range was six to thirty years and that the court had made an offer of twenty years during a Rule 402 conference. Following the conclusion of testimony, the defendant's counsel argued that the defendant had shown deficient performance and prejudice and requested that the court "vacate the conviction and remand it for a new trial."

¶ 7    In a written order entered on October 28, 2020, the court found that the defendant had indeed proven that trial counsel performed deficiently by "fail[ing] to fully inform [the defendant] of his exposure to extended and consecutive sentencing and the maximum term that could result," and that the defendant was prejudiced by counsel's errors because counsel's misadvice caused the defendant to reject a favorable plea offer. However, the court did not agree with the defendant's requested remedy of a new trial. The court reasoned that "nothing about [the defendant's] claim or its supporting facts affects the propriety of the trial. To be sure, [the defendant] was proven guilty

of the crimes for which he was convicted. In no way should this claim disturb the findings of guilt." Instead, the court believed that the appropriate remedy was to vacate the defendant's sentence and to hold a new sentencing hearing at which it could fashion a sentence that effectively neutralized the taint of the constitutional violation without granting a windfall to the defendant.

¶ 8     The court held the resentencing hearing on July 5, 2022. The State informed the court that the defendant had previously been convicted of armed robbery and was on parole for that offense at the time of the attempted murders at issue in this case. The defense presented testimony from the defendant's girlfriend, Nicika Levi, who testified that she had visited the defendant both in jail and in prison and had noticed that the defendant had changed "tremendously" for the better since his arrest. Levi asserted that the defendant is "caring, he's very reliable as far as being compassionate, he's there for his family, verbally of course over the phone, very supportive. I have [seen] a change in him." Levi stated that the defendant would be able to live with her if he were released and that he would be able to work for a business owned by a family friend. The defendant also presented evidence establishing that he has several health maladies.

¶ 9     The defendant testified in allocution and asked for a second chance at life. He stated that he is a completely different person now and would not recognize the person he was when he committed these offenses. He said he was deeply sorry for his actions and understood why he needed to go to prison. The defendant's counsel asked the court for a sentence of twenty years in prison, the same sentence that the trial court had originally offered, and argued that anything beyond thirty years, the term that the defendant believed to be the maximum when he rejected the twenty-year offer, would be "inappropriate" and unfair to the defendant.

¶ 10    After hearing the testimony and the arguments of the parties, the court observed that the defendant was "a different person today than he was at the time of the crimes here," is more mature, has a wealth of family support, and has been well-behaved in prison. However, while acknowledging that the defendant's personal changes are relevant, the court stated that it "can't overlook who he was back at the time when he shot these people. I think that's of primary concern." Ultimately, the court resentenced the defendant to a total sentence of thirty-seven years in prison, twenty-five years for the attempted murder of Grant and twelve years for the attempted murder of Ingram. The defendant made an oral motion for reconsideration, which the court denied.

¶ 11    On July 7, 2022, the defendant filed a notice of appeal regarding the circuit court's July 5, 2022, sentencing order. That appeal was docketed as case number 1-22-1062. On February 7, 2023, the defendant filed a late notice of appeal regarding the circuit court's October 28, 2020, order granting his petition for postconviction relief and ordering resentencing. This court allowed the late notice of appeal and docketed the appeal as case number 1-23-0220. We subsequently granted the defendant's motion to consolidate the appeals, and we now address them here together.

¶ 12    In these appeals, the defendant raises three distinct arguments. First, he asserts that resentencing was not the appropriate remedy and that he should have been granted specific performance of the twenty-year offer that he rejected based on counsel's misadvice. He then raises two arguments in the alternative that the sentence imposed after resentencing violated his right to due process because it exceeded what he was advised was the maximum potential sentence and that the new thirty-seven-year sentence is excessive. We will address each argument in turn.

¶ 13    First, the defendant argues that the circuit court erred in choosing resentencing as the appropriate remedy rather than specific performance of the twenty-year offer that he rejected based

on trial counsel's misadvice. He asserts that he should not have to serve an additional seventeen years in prison for an error that was not his fault and that he should receive the "benefit of the bargain negotiated on his behalf." However, as the State points out in its brief, the defendant did not request specific performance as the remedy for trial counsel's ineffective assistance. Rather, at the third-stage evidentiary hearing his counsel expressly requested that the court "vacate the conviction and remand it for a new trial." And the court understood that to be the defendant's desired relief, with the court noting in its written order that "[the defendant's] counsel argued that he should receive a new trial." Indeed, it was not until the resentencing hearing itself that the defendant requested a twenty-year sentence.

¶ 14    It is a well-established principle of appellate law that a party cannot for the first time on appeal ask for a remedy that was not requested below. See *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶ 29 ("It is well settled that issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal."); *Monday v. Ace Home Improvement Services, Inc.*, 248 Ill. App. 3d 481, 485 (1993); *Bell v. Yale Development Co.*, 102 Ill. App. 3d 108, 112 (1981). Because the defendant only requested a new trial during third-stage proceedings below, he cannot now claim that the circuit court erred in not granting specific performance, a remedy that he did not request during the relevant timeframe. He has forfeited that argument on appeal.

¶ 15    However, forfeiture aside, we still do not see any merit to the defendant's argument. The main reason for that conclusion is the amount of discretion that the circuit court possesses when crafting a remedy for this type of constitutional violation and the resulting deferential standard of review that we must apply to this issue. The defendant contends that we should review the circuit

court's choice of remedy *de novo*. However, the case that he cites for that proposition does not address the particular issue before us and rather states more generally that, when reviewing the circuit court's decision following a third-stage evidentiary hearing, "if no *** [credibility] determinations are necessary at the third stage, *i.e.,* no new evidence is presented and the issues presented are pure questions of law, we will apply a *de novo* standard of review," unless the circuit court judge's familiarity with the defendant's trial or sentencing has some bearing on the disposition of the defendant's petition. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 16    But the United States Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156 (2012), is more relevant. There, the Supreme Court addressed the particular question of how to review a lower court's choice of remedy for a postconviction claim that the ineffective assistance of trial counsel caused a defendant to forego a favorable plea offer. Its analysis of the issue makes clear that the choice of remedy is in the lower court's discretion. The Supreme Court explained that "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.' " *Id.* at 170 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). "Thus, a remedy must 'neutralize the taint' of a constitutional violation, [citation], while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution [citation]." *Id.*

¶ 17    According to the Supreme Court, the injury suffered by a defendant who rejects a plea offer based on the misadvice of counsel and then receives a harsher sentence after trial can come in at least one of two forms. *Id.* In the first, "the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been

admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial." *Id.* at 170–71. If the defendant in such a case proves at an evidentiary hearing that he would have accepted the plea offer if not for counsel's error, "*the court may exercise discretion* in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." (Emphasis added.) *Id.* at 171. In the second scenario, resentencing alone may not be enough to cure the constitutional harm. "If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice." *Id.* "In these circumstances, *the proper exercise of discretion* to remedy the constitutional injury *may be* to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then *exercise discretion* in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." (Emphases added.) *Id.*

¶ 18 Notably, in both of these scenarios, the Supreme Court described the choice of remedy as being a discretionary decision on the part of the postconviction court, and the Supreme Court further clarified that point by noting that it did not need to define the "boundaries of proper discretion" and that existing statues, court rules, and caselaw "will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion." *Id.*

¶ 19 Accordingly, it is clear from the Supreme Court's discussion in *Lafler* that the choice of remedy to grant a defendant who rejects a plea offer based on the misadvice of counsel and then receives a greater sentence following trial is a matter committed to the sound discretion of the postconviction court. Indeed, that is how this court has previously interpreted *Lafler*. In *People v.*

*Hudson*, 2017 IL App (3d) 160225, this court was presented with virtually the same situation that we have presently before us. The defendant was seeking postconviction relief after trial counsel's misadvice caused him to reject a plea offer and he ultimately received a greater sentence following trial. *Id.* ¶ 5–6. A federal district court granted the defendant's petition for a writ of *habeas corpus* and ordered the State to reoffer the defendant the same offer it had extended prior to trial, and the State complied. *Id.* ¶ 8. However, after the defendant accepted that offer, the circuit court rejected the plea agreement and maintained the defendant's convictions and original sentence. *Id.* ¶ 9.

¶ 20   On appeal of the circuit court's decision in *Hudson*, the defendant argued that the standard of review should be *de novo* and the State argued that it should be abuse of discretion. *Id.* ¶ 13. The appellate court, citing *Lafler*, agreed with the State, observing that "the state trial court has to exercise its discretion to determine the correct remedy" and that "we review the trial court's decision to determine if it abused its discretion in fashioning a remedy that would neutralize the taint of the sixth amendment violation." *Id.*; see also *People v. Nicholson*, 2021 IL App (3d) 180010, ¶ 25 ("The trial court has the *discretion* to impose a sentence that is either (1) equal to the 6 years offered by the State or (2) greater than it but less than the 25 years Nicholson initially received." (Emphasis added.)); *cf. People v. Stapinski*, 2015 IL 118278, ¶ 35 ("[O]nce it is determined that a defendant suffered a prejudicial violation of his due process rights, the trial court's decision on the appropriate remedy—whether it be dismissal of the indictment or some other remedy—is reviewed for an abuse of discretion.").

¶ 21   Accordingly, we review the circuit court's choice of remedy in this case for abuse of discretion. "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful,

or unreasonable to the degree that no reasonable person would agree with it." *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 22   For two reasons, we do not view the circuit court's decision to grant the defendant resentencing as an abuse of discretion. First, although the defendant paints the court's decision as choosing resentencing over specific performance of the original plea offer, that was not what the court was presented with during the third-stage proceedings. As we noted at the outset of our analysis of this issue, the defendant specifically asked that his convictions be vacated and that he be granted a new trial, not that he be reoffered the original offer. And, as the circuit court observed in its order, granting the defendant a new trial would certainly be the type of windfall that *Lafler* cautioned against. Nothing about trial counsel's error in this case undermined the verdict of guilt, and there is no indication that the defendant did not receive a fair trial. See *United States v. Cobb*, 110 F. Supp. 3d 591, 601 (E.D. Pa. 2015) (explaining that, "[i]n a case where a defendant receives ineffective assistance at the plea bargaining stage, then goes on to be convicted at a fair trial of the same offense that was the subject of the plea offer, the proper remedy is not ordinarily a new trial" because, in such a situation, a new trial would be a windfall to the defendant (citing *Lafler*, 566 U.S. at 171)). Accordingly, when considering the context of what the defendant asked for, the court did not act unreasonably in rejecting the defendant's requested remedy.

¶ 23   Second, this case does not present the second scenario discussed in *Lafler*, in that reoffering the defendant the same twenty-year sentence that the trial court proposed during the Rule 402 conference is not the only way to grant the defendant an appropriate remedy. This is because there is no indication in the record that the offer involved reduced charges that are no longer available and because the sentence offered is within the range of potential sentences for the defendant's

convictions under the sentencing guidelines that the parties agreed to apply, which imposed a sentencing range of twelve to ninety years.[1] In other words, the court could hold a full resentencing hearing and still be able to grant the defendant a twenty-year sentence if the court believed that it was appropriate after a review of all of the evidence, which would include the mitigating circumstances related to the Rule 402 plea offer and trial counsel's ineffective assistance. Resentencing is consistent with *Lafler*'s mandate that the remedy be "tailored to the injury suffered from the constitutional violation" without "unnecessarily infringing on competing interests." 566 U.S. at 170. With that being the case, we cannot say that it was unreasonable for the court to grant the defendant a resentencing hearing at which it could hear all evidence bearing on the defendant's sentence. The court's choice of remedy was not an abuse of discretion.

¶ 24    In his second issue, the defendant makes two arguments in the alternative regarding the length of his new sentence. First, the defendant asserts that his right to due process prohibited the court from resentencing him to a term that exceeds what he believed to be the maximum sentence that he could receive when he rejected the court's twenty-year offer and elected to proceed to trial. In support of this argument, the defendant cites a line of cases examining the proper remedy when

---

[1] In his brief, the defendant asserts that the minimum sentence was actually sixty-two years due to the retroactive application of certain firearm enhancements that had been ruled unconstitutional for a period of time during his trial court proceedings but were later revived shortly before his original sentencing. He contends, therefore, that a twenty-year sentence was not available at resentencing and that the only way to grant him a twenty-year sentence was to reoffer the original offer. However, the record shows that the defendant's counsel during resentencing expressly asked that the firearm enhancements not be applied. The State and the court agreed with the defendant, and he was resentenced as though the enhancements did not apply. He cannot now claim that it was error for the court to do exactly what he asked. See *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) ("[A] party cannot complain of error which that party induced the court to make or to which that party consented."). Furthermore, the defendant fails to explain how the enforcement of a sixty-two-year minimum sentence at resentencing would not equally preclude his request for the reoffering of the twenty-year offer, an outcome that he surely does not want.

a defendant enters a guilty plea in exchange for a specific sentence and the trial court incorrectly admonishes the defendant about the maximum potential sentence and then sentences the defendant to a term of years greater than the admonished maximum. In such a case, the defendant is typically allowed to withdraw his plea and plead anew. *People v. Johnson*, 2021 IL App (2d) 180775, ¶ 23 (citing *People v. McCracken*, 237 Ill. App. 3d 519, 521–22 (1992)). However, when that is not possible, such as when a defendant is being sentenced following a revocation of probation, " 'the trial court is limited in sentencing by the maximum penalty upon which the defendant had originally been admonished.' " *Id.* (quoting *People v. Johns*, 229 Ill. App. 3d 740, 743 (1992)); see also *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005) (holding that "due process is violated when a defendant pleads guilty in exchange for a specific sentence and the trial court fails to advise the defendant, prior to accepting his plea, that a mandatory supervised release term will be added to that sentence" and that the remedy in such a situation is to modify the defendant's sentence to reflect the sentence that he believed he would receive); *People v. Wenger*, 42 Ill. App. 3d 608, 611 (1976) ("[D]ue process demands that the trial court's admonition define the maximum penalty that might be imposed after revocation of defendant's probation.").

¶ 25    The defendant asserts that this same principle should be applied in this case and that due process requires that his sentence be capped at thirty years, the amount that he was told was the maximum potential sentence. He contends that he is in the same position as a defendant who is being sentenced following the revocation of probation and that, as in *Johnson*, *Johns*, and *Wenger*, because his conviction is not at issue and cannot be vacated, the best available remedy is to limit his sentence to the advised maximum. We agree. The defendant is, in all material respects, in the same position as the defendants in *Johnson*, *Johns*, *Whitfield*, and related cases. His pleading

decision was materially affected by misadvice regarding the maximum potential sentence faced, amounting to a violation of his constitutional rights, and, as the court below has already found, he would have pleaded differently had he been correctly advised of his true sentencing exposure. In such a case, sentencing the defendant to term beyond that which he believed to be possible when he chose to go to trial would be "inconsistent with constitutional concerns of fundamental fairness." *Whitfield*, 217 Ill. 2d at 190.

¶ 26    We note that in its brief the State did not respond to the merits of this argument and instead dismissed it as merely an attempt to argue for *de novo* review of the circuit court's choice of sentence. As a result, we do not have an opposing view of the issue. Regardless, we do not see any compelling reason not to limit the defendant's maximum sentence to thirty years. Possible distinguishing factors could be that the cases that the defendant relies on involve guilty pleas, rather than the rejection of a plea offer, and that the erroneous information regarding the maximum potential sentence came from the court, rather than the defendant's own counsel, but neither difference is material. It does not matter whether the defendant pleaded guilty in reliance on bad information from the court or rejected a plea offer based on constitutionally ineffective advice from counsel. The defendant is in the same position as the defendants who received sentences beyond the admonished maximum: he has been sentenced to a term of years beyond what he was told was possible when he made the decision of whether to accept a plea offer. Accordingly, due process and fundamental fairness require that his sentence not exceed thirty years, the term that he was told was the maximum potential sentence.

¶ 27    In his second alternative argument, the defendant asserts that his thirty-seven-year sentence is excessive. However, based on our conclusion that his sentence cannot exceed thirty years, we need not address the issue.

¶ 28    In sum, we affirm the circuit court's October 28, 2020, order granting the defendant's petition for postconviction relief and ordering resentencing. We reverse the court's July 5, 2022, order resentencing the defendant to a total term of thirty-seven years in prison and remand the case to the circuit court with instructions to sentence the defendant to a term not exceeding thirty years.

¶ 29    No. 1-23-0220, Affirmed.

¶ 30    No. 1-22-1062, Reversed and remanded with instructions.

---

*People v. Eddie Hill*  **2023 IL App (1st) 221062 & 230220 (cons)**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, 00 CR 9505, Honorable William G. Gamboney. Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | JAMES E. CHADD State Appellate Defender DOUGLAS R. HOFF Deputy Defender JOHN R. BREFFEILH Assistant Appellate Defender<br>Office of the State Appellate Defender First Judicial District<br>203 N. LaSalle St., 24th Floor<br>Chicago, IL 60601<br>Phone: (312) 814-5472 |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney of Cook County<br>Enrique Abraham, Joseph Alexander – Asst. State's Attorneys, Of Counsel<br>309 Richard J. Daley Center<br>Chicago, IL 60602<br>(312) 603-5496 |

---