# Illinois Official Reports

## Appellate Court

*People v. Hudson*, 2017 IL App (3d) 160225

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT HUDSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket Nos. 3-16-0225, 3-16-0146 cons. |
| Filed | November 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 04-CF-2005; the Hon. Carla Alessio-Policandriotes, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Sarah L. Bakker, Jeffrey R. Carroll, Michael P. Doss, and Daniel M. Greenfield, of Sidley Austin LLP, of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Marie Q. Czech and Colleen M. Griffin, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justice Carter concurred in the judgment and opinion. |

**OPINION**

¶ 1      The defendant appeals a trial court order rejecting a plea deal that was reoffered by the State on remand after a federal *habeas* court found that the defendant had received ineffective assistance of counsel during plea negotiations.

¶ 2      FACTS

¶ 3      In 2004, the defendant, Robert Hudson, was indicted for armed robbery, a Class X felony (720 ILCS 5/18-2(a)(2) (West 2004)), and three counts of unlawful restraint, Class 4 felonies (720 ILCS 5/10-3(a) (West 2004)), arising from the act of robbing a truck stop and restraining three of the employees. A public defender was appointed to represent the defendant, and an investigator with the Will County public defender's office interviewed the defendant and completed a "Public Defender's Investigative Sheet" that appears to demonstrate defendant's dishonesty about his criminal history. The sheet indicates that the defendant admitted to three previous convictions for murder, theft, and unlawful possession of a controlled substance. It also appears that the defendant denied using an alias. That interview took place on December 28, 2004. A month later, Hudson's counsel received a copy of the LEADS (Law Enforcement Agencies Data System) criminal history report, which was generated using Hudson's fingerprints. That criminal history report showed that a person with Hudson's fingerprints had no less than six criminal convictions and had used both an alias name and date of birth. Based on the contents of the LEADS criminal history report, the defendant would have been subject to mandatory life imprisonment if convicted of the offenses arising out of the truck stop robbery, as a habitual criminal, pursuant to the Criminal Code of 1961 (formerly 720 ILCS 5/33B-1 *et seq.* (West 2004) (repealed by Pub. Act 95-1052, § 93 (eff. July 1, 2009))).

¶ 4      Despite the LEADS criminal history report, defense counsel informed the defendant that, if convicted, the defendant was subject to an extended-term sentence of 6 to 60 years because of his previous Class X felony murder conviction. Following an Illinois Supreme Court Rule 402 (eff. July 1, 1997) plea discussion conference, defense counsel informed the defendant that he would most likely receive a sentence of 44 years if convicted, and he would be eligible for good-time credit. Prior to trial, the State offered the defendant some plea deals, including a 20-year sentence, an 18-year sentence on a Class 1 felony, and finally, a 17-year sentence on a Class X felony. The defendant rejected each offer. Then, while the jury was deliberating, the State offered the defendant a 16-year sentence, which the defendant also rejected. The jury found the defendant guilty of armed robbery and unlawful restraint.

¶ 5      Following the defendant's conviction, the trial court ordered the preparation of a presentence investigation, and the probation officer determined that the defendant had two prior Class X felonies, making the defendant subject to a mandatory life sentence due to the armed robbery conviction, the defendant's third Class X felony conviction. The defendant filed a *pro se* motion for a new trial on the basis of ineffective assistance of counsel and the trial court's failure to admonish regarding the life sentence. The trial court appointed new counsel, who filed another motion for a new trial, asserting that trial counsel failed to conduct an adequate investigation of the defendant's criminal history and thus failed to advise the defendant of the true consequences of a decision to plead not guilty. The motion asserted that the defendant would have accepted the 16-year plea deal had he been correctly informed.

- 2 -

¶ 6    After a hearing on the motion, the trial court denied the motion and sentenced the defendant to natural life in prison. The defendant appealed, arguing that he was denied the effective assistance of counsel during plea negotiations. This court affirmed the defendant's convictions and sentence, finding that the misinformation was the result of the defendant's own subterfuge. *People v. Hudson*, No. 3-07-0596 (2009) (unpublished order under Supreme Court Rule 23). The defendant sought leave to appeal to the Illinois Supreme Court, but the petition was denied. *People v. Hudson*, 233 Ill. 2d 578 (2009) (table).

¶ 7    Thereafter, the defendant filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). In his postconviction petition, the defendant argued that he was not eligible for sentencing as a habitual criminal. He also argued that his trial and appellate attorneys were ineffective for failing to raise this issue and for failing to argue that his sentence violated the *ex post facto* clauses of the United States and Illinois Constitutions. The trial court found that the defendant's constitutional claims were waived because they could have been raised on direct appeal, and the rest of defendant's arguments were substantially without merit. The defendant's petition was summarily dismissed and the defendant appealed. This court affirmed the dismissal. *People v. Hudson*, 2012 IL App (3d) 100485-U.

¶ 8    The defendant then filed a petition for a writ of *habeas corpus* in federal district court under 28 U.S.C. § 2254 (2000), claiming that this court unreasonably concluded that he was not denied the right to the effective assistance of counsel during plea negotiations. The federal district court conditionally granted the defendant's *habeas* petition, finding that trial counsel was ineffective for failing to advise the defendant that he was subject to a mandatory life sentence. *Hudson v. Harrington*, No. 13 C 00678, 2014 WL 4244255 (N.D. Ill. Aug. 27, 2014), enforcement denied *sub nom. Hudson v. Butler*, No. 13 C 00678, 2016 WL 3742848 (N.D. Ill. July 13, 2016), *aff'd sub nom. Hudson v. Lashbrook*, 863 F.3d 652 (7th Cir. 2017). The federal court explained that in cases involving ineffective assistance of counsel during plea negotiations, there are two kinds of prejudice that criminal defendants can suffer. The first arises where a defendant was offered a lesser sentence on a charge, rejected the plea offer, and then was convicted on the same charge. In that situation, the "state trial 'court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.' " *Hudson*, 2014 WL 4244255, at *9 (quoting *Lafler v. Cooper*, 566 U.S. 156, 171 (2012)). "The second form of prejudice arises where 'resentencing alone will not be full redress for the constitutional injury. If, for example *** a mandatory sentence* confines a judge's sentencing discretion after trial, a resentencing [based] on the conviction at trial may not suffice.' " (Emphasis added.) *Id.* (quoting *Lafler*, 566 U.S. at 171). The federal district court concluded that the remedy for the sixth amendment violation pursuant to *Lafler* was to direct the State to reoffer the 20-year deal, to a charge that would not trigger mandatory life imprisonment. Assuming the defendant accepted the offer, " 'the state trial court [could] then exercise its discretion in determining whether to vacate the convictions and resentence [defendant] pursuant to the plea agreement, to vacate only some of the convictions and resentence [defendant] accordingly, or to leave the convictions and sentence from trial undisturbed.' " *Id.* (quoting *Lafler*, 566 U.S. at 174).

¶ 9    Pursuant to the order from the federal district court, the State reoffered the 20-year plea deal to the charge of attempted armed robbery, a Class 1 felony, a charge that would not trigger

mandatory life imprisonment. The defendant accepted the offer. The trial court, though, after reviewing the materials in the case as if there was never a trial, rejected the plea deal and said it would not have accepted it in 2005. The trial court maintained the defendant's prior convictions of armed robbery and unlawful restraint and his sentence of natural life without parole. The defendant filed the instant appeal.

¶ 10    While this appeal was pending, the defendant returned to federal court, seeking to enforce the *habeas* decision by ordering his immediate release from prison. The federal district court dismissed the action, finding that it was up to this court to determine whether the trial court acted within the bounds of its discretion in rejecting the plea offer. *Hudson*, 2016 WL 3742848. The Seventh Circuit affirmed that dismissal. *Hudson*, 863 F.3d 652.

¶ 11                                          ANALYSIS

¶ 12    The defendant argues that the trial court erred in rejecting the State's 20-year plea offer and maintaining the defendant's convictions and life sentence. The State acknowledges that the federal district court concluded that trial counsel's representation during plea negotiations was ineffective assistance and that the only issue before the state trial court was the remedy for that constitutional violation. However, the State argues that the state trial court properly exercised its discretion under *Lafler* when it considered, but rejected, the reoffered plea deal. The defendant argues that the state circuit court failed to neutralize the taint of the sixth amendment violation, and acceptance of the 20-year plea was required to neutralize the taint.

¶ 13    The parties disagree regarding the applicable standard of review. The State argues for an abuse of discretion standard, applicable when a state trial court rejects a plea agreement. See *People v. Henderson*, 211 Ill. 2d 90, 103 (2004). The defendant argues for a *de novo* standard. See *People v. Hale*, 2013 IL 113140, ¶ 15. The remedy for a sixth amendment violation during plea negotiations is one that is tailored to the injury suffered from the constitutional violation. *People v. Curry*, 178 Ill. 2d 509, 537 (1997). It must neutralize the taint of the constitutional violation, but at the same time not grant a windfall to the defendant or unnecessarily infringe on competing interests. *Lafler*, 566 U.S. at 170. As the *Lafler* Court noted, the state trial court has to exercise its discretion to determine the correct remedy. *Id.* at 174. Thus, we review the trial court's decision to determine if it abused its discretion in fashioning a remedy that would neutralize the taint of the sixth amendment violation.

¶ 14    Defendants have a sixth amendment right to effective assistance of counsel during plea negotiations; they have "the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis in original.) *Curry*, 178 Ill. 2d at 528. As noted above, the federal district court already concluded that the defendant's trial counsel's representation during plea negotiations was ineffective assistance, and the only issue on remand to the state trial court was the remedy for that constitutional violation. The appropriate remedy is the one best tailored to the injury suffered from the constitutional violation; it must " 'neutralize the taint' " of the constitutional violation. *Lafler*, 566 U.S. at 170. The remedy should not, however, grant a windfall to the defendant or needlessly waste State resources. *Id.* Although it may be difficult to restore a defendant and the prosecution to the exact positions they were in prior to the rejection of a plea offer, that baseline should be used in crafting the remedy. *Id.* at 172.

¶ 15    The federal district court, citing *Lafler*, noted that some relief other than resentencing on the defendant's convictions was required to remedy the constitutional violation because the

trial court would still be constrained to order mandatory life imprisonment if there was simply a resentencing on the defendant's convictions. The federal court determined that the first plea offer, to a charge that would not trigger a mandatory life sentence, best placed the parties at the beginning of the plea process. The federal court acknowledged that this plea deal did not factor in the two prior Class X felonies—but it was a better alternative than no remedy for the constitutional violation. *Hudson*, 2014 WL 4244255, at \*9 n.5. This rationale specifically limits the state trial court's discretion with respect to resentencing the defendant to a term of natural life.

¶ 16 Proceeding in accordance with the conditional writ of *habeas corpus*, the prosecution reoffered a plea to the defendant: 20 years' imprisonment on the Class 1 felony of attempted armed robbery. Under the authority of *Lafler* and *Curry*, the state trial court had discretion to reject details of the plea, but that discretion was limited by the requirement that the remedy had to neutralize the taint of the constitutional violation. Thus, under the facts of this case, that discretion did not extend to rejecting a plea to a charge that did not trigger a mandatory life sentence. We vacate the trial court's order and remand with directions to accept the plea to the Class 1 felony and resentence accordingly.

¶ 17                                                    CONCLUSION
¶ 18 The judgment of the circuit court of Will County is reversed and remanded.

¶ 19 Reversed and remanded.