2025 IL App (4th) 241419

NOS. 4-24-1419, 4-24-1420 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| REBECCA I. MUCKEY, | ) | Nos. 21CF289 |
| Defendant-Appellant. | ) | 22CF255 |
| | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justice Grischow concurred in the judgment and opinion.
Justice Doherty concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1        On January 20, 2023, defendant, Rebecca I. Muckey, entered a guilty plea that required her to serve 90 days in jail, with day-for-day credit, and 30 months' probation. In July 2023, the State filed a petition to revoke defendant's probation and subsequently filed two amended petitions. In February 2024, the State offered a negotiated disposition to dismiss all but one allegation of the petitions and immediately terminate defendant's probation if defendant admitted to that allegation and served 90 days in jail, with day-for-day credit and credit for time served. Defendant did not accept the State's offer before it expired. In May 2024, defendant admitted to using methamphetamine in violation of her probation. Following a sentencing hearing, the trial court modified defendant's probation to include new conditions. Defendant appeals, arguing that her counsel was ineffective for failing to properly advise her about the State's offer.

We remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3             On August 13, 2021, in Henry County case No. 21-CF-289, defendant was charged with one count of possession of methamphetamine (720 ILCS 646/60(a) (West 2020)), two counts of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2020)), and one count of unlawful use of a weapon (720 ILCS 5/24-1(a)(2) (West 2020)).

¶ 4             The trial court appointed the Henry County Public Defender's Office to represent defendant. On February 28, 2022, defendant appeared in court with counsel and stated: "I would like to either represent myself *pro se* or have another public defender appointed if possible." Defendant expressed her belief that counsel had "never really heard me out on what is happening" and said she was "not confident [he] has my best interests at heart." In response, counsel first pointed out that defendant "has missed multiple appointments" but also admitted "[s]he has made some appointments as well." Counsel further responded: "I don't agree with what she thinks should be presented at trial." Nevertheless, counsel stated he was "fine with continuing to represent [defendant]." The court denied defendant's request for a different attorney, finding no grounds "to appoint a new public defender" because counsel was "fulfilling his legal duties." The court advised defendant: "You have the right to represent yourself at trial if you want to." Defendant said she wanted to represent herself. The court then admonished defendant about representing herself.

¶ 5             At a pretrial hearing on May 23, 2022, defendant stated that she was "going to have to hire private counsel." At the next hearing, on June 27, 2022, defendant asked the trial court to reappoint a public defender to represent her because she could not afford a private attorney and did not feel comfortable representing herself. At a hearing on August 11, 2022, defendant was represented again by appointed counsel. On August 12, 2022, in a separate Henry County case,

case No. 22-CF-255, defendant was charged with two counts of forgery (720 ILCS 5/17-3(a)(1), (2) (West 2022)) and one count of theft (720 ILCS 5/16-1(a)(2) (West 2022)).

¶ 6        On January 20, 2023, defendant pled guilty to one count of possession of methamphetamine in case No. 21-CF-289 and one count of forgery in case No. 22-CF-255. Pursuant to a plea agreement with the State, defendant was sentenced to 90 days in jail, with day-for-day credit and credit for time served, and a concurrent term of 30 months' probation. The State dismissed the remaining charges against defendant in both cases. The probation order required defendant to (1) obtain a controlled substance evaluation and commence recommended treatment within 45 days of her release from custody, (2) successfully complete treatment and provide verification of completion to Henry County court services, (3) not possess or use cannabis or any controlled substance without a doctor's prescription, (4) submit to periodic drug testing, (5) pay restitution of $250 to the forgery victim, and (6) pay fines, fees, and costs.

¶ 7        On July 18, 2023, the State filed a petition to revoke probation, alleging that defendant violated the conditions of her probation by (1) failing to obtain a substance abuse evaluation and complete recommended treatment, (2) admitting that she used methamphetamine on April 5, 2023, (3) failing to pay fines, costs, fees, and restitution, and (4) being charged with unlawful possession of cannabis in Knox County on March 28, 2023. On August 7, 2023, the State filed a supplemental petition to revoke probation, alleging that defendant refused to submit to a drug test on July 24, 2023. On August 17, 2023, the State filed a second supplemental petition to revoke probation, alleging that defendant committed the offenses of "Methamphetamine Delivery" and "Possession of Methamphetamine" in Knox County on August 10, 2023.

¶ 8        In the proceedings on the petitions to revoke probation, defendant was represented by the same counsel who represented her in the underlying criminal cases. On February 26, 2024,

defendant appeared in court with counsel and addressed the trial court as follows:

> "At this time, I would like to have [my attorney] removed from my counsel. He is over case loaded, he is understaffed, he is not capable of defending my freedoms or my constitutional rights. I will go ahead and continue *pro se*."

Counsel responded, "I am ready on any of the cases and would be fully prepared for trial at any point in time, if the Court deemed necessary." The court denied defendant's request for a new attorney, stating, "I don't find good cause for that motion." The court also denied defendant's request to discharge her attorney.

¶ 9　　　　Defendant then stated that she did not want counsel to represent her, so she would represent herself. The trial court admonished defendant about representing herself. When the court told defendant she had the right to be appointed an attorney free of charge if she could not afford one, defendant responded:

> "That's not true. That is not true. I have asked this Court to appoint me a proper attorney. He has been fired and given back to me twice by default ***. And now I have him back again, and he is still not doing his job. Two years now I have tried to get rid of this man."

When the court asked defendant if she understood that she was entitled "to the appointment" of a public defender, the following exchange occurred:

> "[THE DEFENDANT]: No. I don't. I do not understand any of this.
>
> THE COURT: Okay. Then I cannot let you represent yourself.
>
> [THE DEFENDANT]: That's fine. I don't understand any of this. But I will not be represented by this man.

THE COURT: *** [Y]ou only have two choices. And if you don't understand your right to a Public Defender—

[THE DEFENDANT]: I have mental health issues. It will take me three days to process this. This is what he's supposed to be explaining to me and he never does."

Defense counsel continued to represent defendant.

¶ 10 On May 17, 2024, defendant appeared in court with counsel and entered an open admission to one count of the second supplemental petition to revoke probation, admitting that she used methamphetamine on April 5, 2023. The State provided a factual basis, and the trial court found that defendant was in violation of her probation. The State dismissed the remaining allegations of the petitions to revoke. The court ordered a presentence investigation report (PSI).

¶ 11 The PSI, dated June 27, 2024, revealed the following. Defendant was 36 years old. In September 2012, defendant was sentenced to three years in the United States Bureau of Prisons (USBP) for conspiracy to manufacture and distribute methamphetamine. In December 2014, defendant was placed on three years of supervision. Defendant's supervision was revoked in October 2017, and she was consequently ordered to serve 12 months and 1 day in the USBP. In 2020, defendant was convicted of possession of paraphernalia and served 35 days in jail in Florida. Defendant also served 46 days in jail from December 22, 2022, to February 5, 2023, in Henry County case Nos. 21-CF-289 and 22-CF-255. Defendant had charges pending against her in Knox County for burglary, theft, possession of a controlled substance, unlawful possession of cannabis, possession of methamphetamine, and possession with intent to deliver methamphetamine. She also had charges pending in Henry County, including unlawful use of cannabis and resisting a peace officer.

¶ 12    The PSI also revealed that defendant paid restitution to the forgery victim in September 2023. In December 2023, defendant obtained a substance abuse evaluation. She completed outpatient substance abuse treatment on April 17, 2024. Defendant's substance abuse treatment provider recommended that defendant seek mental health services and referred defendant to a mental health provider. Defendant's drug tests from November 2023 to May 2024 were negative for all substances. Defendant has four children, two of whom reside in Galesburg, Illinois, with their paternal grandmother. Defendant had not been employed full-time since 2020 but reported that she was working part-time as a church custodian.

¶ 13    On August 27, 2024, defendant appeared in court and was represented by counsel. Defendant addressed the trial court as follows:

"I was advised by another attorney to ask the Court to possibly replace [counsel] and file a motion to vacate based off of the reasoning I was given an offer by the State on February 9th of 90 days, day-for-day credit, terminate probation, pay my fines, and then on *** May 17th is when I was found guilty of my violation of probation. It wasn't until July 15th that I was informed that I had 46 days' credit for jail time served, which if I would have took that plea deal, it would have been time served, no jail time, pay my fines, and be off probation. That would have been done back in March or April had I been fully aware of the—the plea deal as well as the jail time credit that I already had served."

Defendant explained that on May 17, 2024, she "entered an admission of guilt for the use of methamphetamine" and "was found in violation of [her] probation on May 17th." Defendant continued:

"I had an appointment with [counsel] in his office on July 15th. As we were

sitting down, you know, we were discussing drug court, and I said, 'Well, what's DOC?'

He said, 'Let's look back at your offer, your last offer.'

That's when he let me know that my last offer was the *** 90 days, day-for-day credit, 45 days in jail, and then he said, 'Well let's see how much time you have served.' And he said, 'Well, you have 46 days' credit jail time.[']

I said, 'Well, shouldn't I have taken the deal back in March, then, or April?'

And, I mean, basically he said it was too late at that point to do that."

Defendant stated that she "would have took the plea deal" if she fully understood it.

¶ 14  In response, defense counsel told the trial court:

"[O]n February 9th I gave her the plea deal, told her it was 90 days with day-for-day and credit for time served. I heard no questions about how much time she had served until it was after the time that we could have taken the plea deal, when the plea deal was taken off the table. I would assume that she has an idea of how long she had served in jail on a case.

When we got the [PSI], that's when I got the final number as far as how much time she had spent in custody. So at that time I, you know, I said, 'This is what credit—what time you'd be getting credit for if there was a DOC sentence or otherwise.'

*** [B]etween the meeting on February 9th, the next meeting that we had was July 15th, there had never been a question of how many days did she actually have in custody, and so I presented her the plea deal as it was.

Again, I would have assumed that she knew how much time she had in custody and had served in this case up until that point." Counsel agreed that the offer was to resolve the pending petitions to revoke probation. In discussing the offer further, the trial court asked defense counsel: "[Y]ou believe talking with [the prosecutor] that [the offer] was supposed to be credit for time served?" Defense counsel responded, "That was my understanding, Your Honor."

¶ 15    The trial court then addressed the prosecutor, inquiring as follows:

"I guess before we go any further, is that an agreement you're still interested in pursuing ***?

I'm not trying to put you on the spot. If you say no, that's fine. I'm not trying to force you to say yes. I'm just asking because if it is yes, we don't need to mess around with this."

The prosecutor responded: "I'm not interested in asking the Court for that resolution today." The court then denied defendant's motion for new counsel, stating, in part, "I don't see where [counsel] did anything wrong."

¶ 16    The trial court then proceeded to the sentencing hearing. At the sentencing hearing, defense counsel first advised the court that defendant's two minor children now live with her "about 50 percent of the time." The State presented no evidence in aggravation. Defendant addressed the court, stating: "A year ago I was a mess. *** I didn't know what I was doing. I have come a long way in that year." Defendant explained that she is "living with [her] grandmother, helping with her." Defendant described herself as "an addict that has mental health issues." She said she is "actually for the first time following through and getting the actual treatment I need and the medicines that I need and working with doctors and figuring out how to function in everyday

life without addiction, without criminal activity, without criminal-minded people around me." The State pointed out that defendant had "stumbles" while on probation and asked the court to sentence her to "180 days in the Henry County Jail, day-for-day credit, credit for time served." Defense counsel noted the positive changes defendant has made in her life and asked the court for defendant to be revoked "unsuccessfully from her probation and for that probation to be terminated with no further punishment."

¶ 17    Following the hearing, the trial court entered a modified order of probation, requiring defendant to (1) "obtain full time employment and verify said employment with court services," (2) continue mental health treatment and comply with all recommendations, (3) take all medication as prescribed, and (4) sign all necessary releases. Defendant filed a motion to reconsider her sentence, which the court denied.

¶ 18    Defendant's probation was set to expire on July 20, 2025. However, according to publicly available information on the website "judici.com," the State filed a petition to revoke defendant's probation on April 3, 2025, and a supplemental petition to revoke probation on June 2, 2025, and both petitions are still pending in the trial court. See *People v. Dyer*, 2024 IL App (4th) 231524, ¶ 11 (taking judicial notice of information contained on "judici.com"). Defendant's term of probation will continue to run until the dispositions of those petitions. 730 ILCS 5/5-6-4 (West 2024); *People v. Ryan*, 283 Ill. App. 3d 165, 169 (1996). Thus, defendant remains on probation.

¶ 19    This appeal followed.

¶ 20                    II. ANALYSIS

¶ 21    On appeal, defendant argues that she was denied effective assistance because her counsel failed to advise her that the State's offer of a negotiated disposition that would terminate

- 9 -

her probation did not require her to serve any additional jail time. She contends that if she had fully understood the offer, she would have accepted it. The State does not dispute the contents of the offer but argues that counsel fulfilled his duties by presenting the offer to defendant.

¶ 22        As a threshold matter, we find it necessary to address the issue raised in the partial concurrence/partial dissent (hereinafter, dissent) before addressing the issues raised by the parties in this appeal. Despite the State and defendant both agreeing on appeal that the State's offer included credit for time served, the dissent has determined that the record is "unclear" about "whether the offer included 'credit for time served.' " *Infra* ¶ 52. Here, the State never asserted on appeal that the terms of the State's offer were "unclear" but stated as follows in its appellate brief: "[T]he record supports the finding that defense counsel 'gave [defendant] the plea deal, told her it was 90 days with day-for-day and credit for time served.' " Moreover, this was not a "concession" by the State, as the dissent characterized it (*infra* ¶ 53), but was simply a summary of the facts as the State saw them and upon which it chose to base its argument on appeal.

¶ 23        We agree with the parties' recitation of the facts in this case and suggest the dissent has employed a strained reading of the record to find a lack of clarity about the terms of the State's offer. First, the dissent pointed out that "[w]hen defendant told the court what her attorney had relayed to her as the State's offer, she did not mention that the offer included a 'credit for time served' component" (*infra* ¶ 51), but the dissent failed to take into account that defendant immediately thereafter stated as follows:

> " '[I]f I would have took that plea deal, it would have been time served, no jail time, pay my fines, and be off probation. That would have been done back in March or April had I been fully aware of the—the plea deal as well as the jail time credit that I already had served.' " *Supra* ¶ 13.

- 10 -

Thus, the record makes it clear that defendant understood the State's offer included credit for time served. Additionally, the dissent quoted the trial judge's statement that the State's offer form " 'doesn't say anything about credit for time served' " (*infra* ¶ 51) but overlooked that immediately thereafter, the judge noted, "Some of them do say, some of them don't." Then, the judge asked defense counsel if it was his belief, based on his discussions with the prosecutor, that the offer "was supposed to be credit for time served?" Defense counsel, who is an officer of the court and obligated to be truthful to the court (see *City of Chicago v. Higginbottom*, 219 Ill. App. 3d 602, 628 (1991)), responded, "That was my understanding, Your Honor."

¶ 24        We simply do not agree with the dissent's reading of the record and believe that where no party claims that a factual dispute or disagreement exists, it is not our role, as a reviewing court, to question the agreed facts. See *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("[I]t is neither the function nor the obligation of this court to act as an advocate or search the record for error."). Nor is it our responsibility to question the wisdom of the State in making the offer the parties agree the State made. See *infra* ¶ 52 (dissent referring to the offer as "puzzling").

¶ 25        Moreover, we are mindful that our supreme court has instructed us to refrain from raising unbriefed issues "when it would have the effect of transforming the court's role from that of jurist to advocate." *People v. Givens*, 237 Ill. 2d 311, 328 (2010) (citing *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002)). According to the supreme court, " 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' " *Givens*, 237 Ill. 2d at 323 (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)). " '[A]s a general rule, [o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.' " (Internal quotation marks omitted.) *Givens*, 237 Ill. 2d at 324 (quoting

*Greenlaw*, 554 U.S. at 244).

¶ 26    Finally, it would be inadvisable, as suggested by the dissent, for us to direct the trial court to conduct on remand a fact-finding hearing about the "terms of the original offer" (*infra* ¶ 54) when the parties do not disagree about what those terms were. In light of our supreme court's clear admonitions to refrain from acting as advocates for any party (*Givens*, 237 Ill. 2d at 328), as well as the state of the record and the content of the briefs, we proceed to analyze the issues and frame the relief and directions in this case on the offer as it was consistently described by the parties on appeal.

¶ 27    A. Right to Effective Assistance of Counsel

¶ 28    Both the United States and Illinois constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. The right to the effective assistance of counsel during probation revocation proceedings is guaranteed by Illinois law. See *People v. Pier*, 51 Ill. 2d 96, 100 (1972); *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 15; 730 ILCS 5/5-6-4(c) (West 2024). Additionally, a "defendant has the right to the effective assistance of counsel in negotiations with the State." *People v. Barkes*, 399 Ill. App. 3d 980, 991 (2010).

¶ 29    To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to satisfy either the deficiency prong or the prejudice prong precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697. Because the facts relevant to defendant's ineffective assistance of counsel claim are not in dispute, our review is *de novo*. See *People v. Bew*, 228 Ill. 2d 122, 127 (2008).

¶ 30        There is little case law addressing effective assistance of counsel in probation revocation proceedings and none specifically addressing effective assistance in the context of negotiations between the State and defendant in such proceedings. However, there are many cases addressing effective assistance in the context of guilty plea negotiations. These situations are alike, as a defendant who admits to charges in a revocation petition is "entitled to the protection of the same due-process requirements which pertain to pleas of guilty." *Pier*, 51 Ill. 2d at 100. Furthermore, "the rules and requirements of probation revocation hearings are similar to those for guilty plea hearings." *People v. Harris*, 392 Ill. App. 3d 503, 507 (2009). Thus, in the absence of cases addressing negotiations in probation revocation proceedings, we apply case law applicable to guilty plea negotiations. See *Harris*, 392 Ill. App. 3d at 508-10 (applying case law applicable to withdrawing guilty pleas when considering a defendant's contention that he should be allowed to withdraw his admission to a probation violation); *People v. Ellis*, 375 Ill. App. 3d 1041, 1046-47 (2007) (applying case law about erroneous admonitions in guilty plea hearings to admonitions provided in a probation revocation hearing).

¶ 31                          B. Deficient Performance

¶ 32        In the context of guilty plea negotiations, "[a] criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis in original.) *People v. Curry*, 178 Ill. 2d 509, 528 (1997). "Counsel's performance is deficient if counsel fails to ensure that a defendant accepts or rejects a plea voluntarily and intelligently." *People Gallardo*, 2024 IL App (2d) 230289, ¶ 22. For a defendant's decision to be a knowing and voluntary one, "defense counsel must fully inform himself of the facts and the law relevant to the State's offer and candidly advise his client as to the direct consequences of accepting or rejecting the offer." *Barkes*, 399 Ill. App. 3d at 991; see *People*

- 13 -

*v. Blommaert*, 237 Ill. App. 3d 811, 816 (1992) (stating a defendant's decision to enter a plea "must be knowingly made after being fully and fairly informed of the consequences of pleading"); see also ABA Standards for Criminal Justice, The Defense Function, Standard 4-6.2(c) (4th ed. 2017) ("Defense counsel should ensure that the client understands any proposed disposition agreement, including its direct and possible collateral consequences."). Counsel performs deficiently if he fails to correctly inform the defendant of the amount of time he will serve if he accepts the State's offer. See *United States v. Knight*, 981 F.3d 1095, 1102 (D.C. Cir. 2020); see also *People v. Jones*, 2021 IL App (1st) 182392, ¶¶ 61-63 (stating counsel's performance was deficient where he provided inaccurate information to the defendant about the sentencing credit he would receive upon pleading guilty); *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 23 (same).

¶ 33        Defense counsel had a duty to advise defendant about the State's offer before it expired. *Missouri v. Frye*, 566 U.S. 134, 145 (2012); see ABA Standards for Criminal Justice, The Defense Function, Standard 4-6.2(b) (4th ed. 2017) (recommending that defense counsel "promptly communicate and explain to the client any disposition proposals made by the prosecutor"). To fulfill his duty, counsel should have engaged in a "confidential consultation" with defendant to fully discuss the State's offer. See *People v. Bass*, 2022 IL App (1st) 210249, ¶ 24; see also ABA Standards for Criminal Justice, The Defense Function, Standard 4-5.2(b) (4th ed. 2017) (stating that the decision of what plea to enter belongs to the defendant "after full consultation with defense counsel"); ABA Standards for Criminal Justice, The Defense Function, Standard 4-5.1(c) (4th ed. 2017) ("Defense counsel should promptly communicate to the client every plea offer *** and provide advice ***.").

¶ 34        "The standard for prompt communication and consultation is also set out in state bar professional standards for attorneys." *Frye*, 566 U.S. at 146 (citing Ill. R. Pro. Conduct (2010)

R. 1.4 (eff. Jan. 1, 2010)). The Illinois Rules of Professional Conduct of 2010 require attorneys to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules" and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions." Ill. R. Pro. Conduct (2010) R. 1.4(a)(1), (b) (eff. Jan. 1, 2010). Rule 1.0(e) defines "informed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Ill. R. Pro. Conduct (2010) R. 1.0(e) (eff. Jan. 1, 2016).

¶ 35        Here, the parties on appeal agree that on February 9, 2024, the State provided defense counsel with an offer that required defendant to admit to one allegation in the petitions to revoke probation and serve "90 days with day-for-day and credit for time served." In exchange, the State agreed to dismiss the remaining allegations of the petitions and terminate defendant's probation immediately. On February 9, 2024, defense counsel "gave [defendant] the plea deal, told her it was 90 days with day-for-day and credit for time served." However, counsel did not meet with or talk to defendant about the offer again until July 15, 2024. By that time, the State's offer had expired. During defendant's meeting with counsel in July, counsel, for the first time, attempted to determine how much credit defendant had earned for "time served." At that point, counsel determined that defendant had served 46 days in jail, which meant that if defendant had accepted the State's offer, she would not have served any additional jail time and the State would have immediately terminated her probation.

¶ 36        Based on the foregoing, defendant proved that her counsel was deficient because he failed to (1) fully inform himself of the facts relevant to the State's offer and (2) fully advise

- 15 -

her of the consequences of accepting the offer. See *Barkes*, 399 Ill. App. 3d at 991. At defendant's sentencing hearing, defense counsel admitted that he had no discussion with defendant about the State's offer beyond "present[ing] her the plea deal as it was." Counsel further admitted that even though the State's offer was for "90 days with day-for-day and credit for time served," he made no attempt to determine the amount of time defendant had served in jail until after the State's offer had expired. Because counsel did not determine how many days defendant had served in jail while the State's offer was still pending, he could not fully advise defendant of the consequences of accepting the plea, specifically, how much time she would serve if she accepted it. Under the specific circumstances of this case, counsel's performance was deficient where counsel failed to recognize that the State's offer was better than the sentence defendant was already serving because the offer terminated defendant's probation and did not require her to serve any further jail time.

¶ 37       The State, however, contends that defense counsel's performance was not deficient because defendant never asked her counsel about how much time she had served and, therefore, counsel did nothing wrong by failing to provide that information to defendant. We disagree. Ineffective assistance of counsel is not limited to situations where counsel provides "affirmative misadvice." See *Padilla v. Kentucky*, 559 U.S. 356, 369-70 (2010). "[T]here is no relevant difference between an act of commission and an act of omission in this context." (Internal quotation marks omitted.) *Padilla*, 559 U.S. at 370; see *Strickland*, 466 U.S. at 690 ("[A]cts or omissions" can be "outside the wide range of professionally competent assistance."). "Silence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement.' " *Padilla*, 559 U.S. at 370 (quoting *Libretti v. United States*, 516 U.S. 29, 50-51 (1995)). Under the facts of this case, where defense counsel did not explain the State's offer to defendant so that she understood it did

not require her to serve any additional jail time, defendant established her counsel's deficient performance—the first prong of *Strickland*.

¶ 38                                                    C. Prejudice

¶ 39          To establish prejudice where the defendant rejected a plea offer because of counsel's deficient performance, the defendant must demonstrate a reasonable probability that

> "(1) he or she would have accepted the plea offer but for counsel's deficient advice, (2) the plea would have been entered without the State canceling it, (3) the circuit court would have accepted the plea bargain, and (4) 'the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.' " *People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 42 (quoting *Frye*, 566 U.S. at 147).

To demonstrate that she would have accepted the plea, the defendant must do more than provide her own self-serving testimony. *People v. Hale*, 2013 IL 113140, ¶ 18. "Rather, there must be 'independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice,' and not on other considerations." *Hale*, 2013 IL 113140, ¶ 18 (quoting *Curry*, 178 Ill. 2d at 532). The disparity between the sentence a defendant faced and a significantly shorter plea offer can support a defendant's claim of prejudice. *Hale*, 2013 IL 113140, ¶ 18. The weakness of a defendant's case can also support a defendant's claim of prejudice. See *Curry*, 178 Ill. 2d at 532.

¶ 40          At defendant's sentencing hearing, defendant asserted that if she had understood that the State's offer did not require her to serve any additional jail time, she would have accepted it. The facts support defendant's assertion because her case was extremely weak—she asserted no defense to the petitions to revoke probation and, instead, entered an admission that she used

methamphetamine in violation of her probation conditions. Because defendant had no defense to the petitions and admitted to violating her probation, she had no reason not to accept the State's offer unless she believed the sentence the State offered was more severe than the sentence she could receive from the trial court. However, the offer from the State was the best possible offer she could receive: the end of her probation for jail time she had already served. No sentence imposed by the trial court could have been better than that. Thus, if defendant understood the State's offer, she would have had no reason not to accept it. In other words, no reasonably informed client in defendant's position would have rejected the State's offer.

¶ 41　　　　Defendant also established the other elements required to prove prejudice. The evidence showed that the State presented its offer to defense counsel on February 9, 2024. While there was no testimony or evidence about exactly how long defendant had to accept the State's offer, defendant stated that she would have accepted the offer in March or April if she understood it. Presumably by May and definitely by July, the offer had expired. There was no evidence or testimony that the State would have canceled or withdrawn the offer prior to its expiration. Additionally, the record reflects that the trial court would have accepted the parties' agreement. At the sentencing hearing on August 27, 2024, the court asked the prosecutor if she was interested in reinstating the State's offer from February, stating that if she was, "we don't need to mess around with this [sentencing hearing]." Based on these comments, it is obvious that the court would have accepted the parties' agreement. Finally, the result of the proceedings would have been more favorable to defendant if she had accepted the State's offer because her probation would have ended without requiring her to do anything more than what she later did—admit to violating her probation. Instead, following the sentencing hearing, the court ordered defendant's probation to continue with new conditions.

¶ 42    Defendant established all the elements necessary to show that she was prejudiced by her counsel's deficient performance, thereby satisfying the second prong of *Strickland*.

¶ 43                                    D. Remedy

¶ 44    Having found that defendant was denied effective assistance of counsel during negotiations with the State, the proper remedy is to require the prosecution to reoffer its proposal to defendant. See *Lafler v. Cooper*, 566 U.S. 156, 171 (2012); *People v. Heath*, 2021 IL App (4th) 190046-U, ¶ 42; *People v. Hudson*, 2017 IL App (3d) 160225, ¶¶ 8, 16. Presuming defendant accepts the offer, the trial court can then exercise its discretion to determine if defendant should receive what the State offered, the sentence the court imposed, or something in between. *Lafler*, 566 U.S. at 171; *Heath*, 2021 IL App (4th) 190046-U, ¶ 43; *Hudson*, 2017 IL App (3d) 160225, ¶ 8.

¶ 45                                  III. CONCLUSION

¶ 46    For the reasons stated, we remand the case for further proceedings consistent with this decision.

¶ 47    Cause remanded.

¶ 48    JUSTICE DOHERTY, concurring in part and dissenting in part:

¶ 49    This case features the exercise of a very unusual form of appellate relief. Although the State normally has exclusive authority to determine which offers it will extend to resolve prosecutions, here we are directing the State to make a particular offer. Though unusual, I agree with the majority that such relief is necessary where (1) the State extends an offer and (2) the defendant loses the ability to accept it due to the ineffectiveness of counsel. The remedy in such a situation is to require the prosecution to reoffer its proposal to the defendant. *Lafler*, 566 U.S. at 171. My only disagreement with the majority is the record contains conflicting information as to

whether the State ever made a "credit for time served" offer.

¶ 50    At the August 27 hearing, the trial court heard from defendant (who was not a witness to the conversation in which the original offer was made) and her attorney. The court did not hear from the assistant state's attorney who is alleged to have extended the original offer; it did, however, have the benefit of her file notes as presented by a colleague. At the trial level, it appears the two sides agreed on three aspects of the offer: (1) that defendant would receive an additional 90-day jail sentence; (2) that she would receive day-for-day good time credit (which effectively reduces the new sentence to 45 days); and (3) that her probation would be terminated. The point of disagreement is whether this offer included "credit for time served," which defendant understood to mean that the 46 days she served under the original plea would satisfy the *additional* 90 days imposed under the offer, effectively ending the case without any further incarceration.

¶ 51    When defendant told the court what her attorney had relayed to her as the State's offer, she did not mention that the offer included a "credit for time served" component. Defense counsel informed the court that the offer was for "90 days with day-for-day [credit] and credit for time served." Defense counsel's notes concerning the offer, however, stated only as follows: "state offer, admit, revoke, 90 days' McHenry County Jail, day-for-day." In other words, his notes do *not* reflect that "credit for time served" was a part of the State's offer. The prosecutor appearing at the hearing was not the one who had extended the offer to defense counsel. However, she had file notes on a form used by the State; the notes state that the offer was for "90 days and D4D," with the latter indicating day-for-day credit. Consistent with defense counsel's notes, the State's form made no mention of defendant being credited for the time she previously served. In reviewing the draft written offer extended to defendant, the court opined, "It says '90 days' and it says 'D4D' which we all know stands [for] day for day. It doesn't say anything about credit for time served."

¶ 52        On its face, the "credit for time served" offer described by defendant is puzzling. Despite filing a petition to revoke defendant's probation, and then amending it twice, it is certainly possible that the State decided to wash its hands of the matter. If so, however, one might expect the offer to be explicitly for "time served," rather than specifying an additional 90 days of jail time to be immediately offset by the earlier time served. In any event, the record is entirely unclear about what offer was made, and specifically, whether the offer included "credit for time served" on defendant's initial 90-day sentence. Given the unusual nature of the relief being afforded here— directing the State to repeat an expired offer it made earlier—I am concerned that we may be ordering the State to make an offer it never previously made.

¶ 53        The appellant bears the burden of providing a reviewing court with a complete record sufficient to support her claims of error. *People v. Lopez*, 229 Ill. 2d 322, 344 (2008). Here, the record contains conflicting information as to whether the State's original offer included a provision that the 46 days defendant served as part of her original sentence would be credited against the additional 90 days being offered. The majority suggests that, on appeal, the State "does not dispute the contents of the offer." That is a fair characterization, but the gaps in the record here are significant. Normally, any doubts arising from the incompleteness of the record would be resolved against the appellant. *Id.* Further, we are not bound by a party's concession. *People v. Nunez*, 236 Ill. 2d 488, 493 (2010); see also *People v. Horrell*, 235 Ill. 2d 235, 241 (2009) (referring to State's concession on appeal). The State's concession does not cure the deficiency in the record. See Ill. S. Ct. R. 329 (eff. July 1, 2017) (providing that material omissions in the record may be corrected by stipulation of the parties or by the trial court). Moreover, despite any concession, the specifics of the offer allegedly provided are an inherent consideration when determining whether counsel was ineffective. See *Strickland*, 466 U.S. at 697.

¶ 54    If defendant *was* made an offer that included a "credit for time served" provision, I agree with the majority that the appropriate relief would be to require the State to extend the offer again. In this extraordinary case, I would agree that remand is appropriate pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994). I would not, however, direct the trial court to compel the State to extend any offers unless the trial court makes a finding as to the terms of the original offer. Therefore, I concur in remandment but dissent from the directions given by the majority.

*People v. Muckey*, 2025 IL App (4th) 241419

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, Nos. 21-CF-289, 22-CF-255; the Hon. Terrence M. Patton, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Darrel F. Oman, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Catherine L. Runty, State's Attorney, of Cambridge (Patrick Delfino, David J. Robinson, and Brittany J. Whitfield, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |